581 A.2d 636

**COMMONWEALTH of Pennsylvania**

v.

**Leroy Ronald FEFLIE, Appellant.**

Superior Court of Pennsylvania.

Argued March 29, 1990.

Filed Oct. 22, 1990.

624

**626**

Martricia McLaughlin, Easton, for appellant.

Daniel G. Spengler, Asst. Dist. Atty., Bath, for Com., appellee.

Before WIEAND, BECK and POPOVICH, JJ.

WIEAND, Judge:

Leroy Ronald Feflie was tried by jury and was found guilty of robbery,[1] theft,[2] and recklessly endangering another person[3] in connection with an armed robbery of the First Valley Bank branch office in Lower Mount Bethel Township, Northampton County, on February 10, 1987. Post-trial motions were denied, and Feflie was sentenced to serve a term of imprisonment for not less than 88 months nor more than 176 months.[4] On direct appeal from the judgment of sentence, Feflie asserts a plethora of alleged pre-trial, trial and sentencing errors. Our review discloses no merit in appellant's contentions, however, and we affirm the judgment of sentence.

1. 18 Pa.C.S. § 3701.
2. 18 Pa.C.S. § 3921.
3. 18 Pa.C.S. § 2705.
4. For purposes of sentencing, the crimes of theft and recklessly endangering another person were merged with the crime of robbery.

On February 10, 1987, at or about 8:25 a.m., a masked gunman entered the Bank through a back door and ordered the assistant branch manager, Eileen Conklin, and another employee, Denise Cannavo, to enter the vault. Cannavo was handcuffed, and Conklin was ordered to place the vault money in a green duffle bag. The robber then handcuffed the two women to a bathroom window and exited the Bank. According to a Bank audit, fifty-six thousand, three hundred seventy-one ($56,371.00) dollars were taken. The robber, according to the testimony at trial, was wearing a mask and was clothed in blue jeans, a green Army jacket, a green hooded sweatshirt, and tan work boots. Yellow plastic gloves covered his hands, and he carried a black, long-barrelled .357 Magnum revolver.

On February 12, 1987, pursuant to an affidavit detailing the robbery and reciting a physical description of the robber and a sworn statement by Patricia Heckman that appellant had told her of his intention to commit the robbery, a warrant was issued for Feflie's arrest. A teletype concerning the arrest warrant was promptly sent and received by Sheriff Terry Ashe of Wilson County, Tennessee. The teletype contained Feflie's last known address in Mt. Juliette, Tennessee, and a description of Feflie's vehicle. This vehicle was later found and identified in front of the residence of Feflie's former wife in Mt. Juliette. Throughout the evening, Tennessee police monitored the Mt. Juliette residence, and the following morning they entered the house and arrested appellant. A search of the house produced a green fatigue jacket. Appellant consented to a search of his Dodge van, and there police found blue jeans, two green T-shirts, an "Assault Force" T-shirt, five .22 caliber shells, ten Federal .357 Magnum shells and six Remington shotgun shells.

Appellant first challenges the sufficiency of the evidence. He contends that the evidence was so circumstantial that it was insufficient to establish his identity as the perpetrator of the crimes. Further, appellant argues that the Commonwealth failed to establish the elements of the

crime of recklessly endangering another person. Specifically, appellant contends, the evidence was insufficient because direct evidence of a weapon was not presented and the evidence produced was not conclusive of the fact that a weapon, if used, was loaded.

"In reviewing appellant's challenge to the sufficiency of the evidence we must determine 'whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.'" *Commonwealth v. Sabharwal,* 373 Pa.Super. 241, 243, 540 A.2d 957, 958 (1988), quoting *Commonwealth v. Jackson,* 506 Pa. 469, 472–473, 485 A.2d 1102, 1103 (1984). "When conflicts and discrepancies arise, it is within the province of the [jurors] to determine the weight to be given to each [witness's] testimony and to believe all, part, or none of the evidence as they deem appropriate." *Commonwealth v. Verdekal,* 351 Pa.Super. 412, 419–420, 506 A.2d 415, 419 (1986). See also: *Commonwealth v. Rose,* 463 Pa. 264, 268, 344 A.2d 824, 826 (1975). The same standard is applicable in cases such as the instant case, where the evidence supporting a conviction was largely "circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Hardcastle,* 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990). See also: *Commonwealth v. Sullivan,* 472 Pa. 129, 150, 371 A.2d 468, 478 (1977); *Commonwealth v. Petrisko,* 442 Pa. 575, 579–580, 275 A.2d 46, 49 (1971).

When viewed in this light, it is evident that the Commonwealth's evidence was legally sufficient to support a finding that appellant had perpetrated the offenses charged. The evidence at trial established that one week prior to the robbery, a woman who resided in the neighborhood of the Bank had observed appellant near the Bank on two separate

occasions. The neighbor testified that she had observed appellant in a dark sports car on the first occasion and then, again, in a dark "Bronco or Jeep-type vehicle." At the time of his arrest, Feflie was the owner of a maroon Dodge van.

Prior to the robbery, appellant was dating and occasionally stayed with Patricia Heckman. Heckman testified that appellant had discussed with her his plans for the bank robbery. He had told her that he planned to enter the Bank after the employees arrived and handcuff the women. Heckman testified that for approximately one month prior to the robbery appellant had been "watching" the Bank and that on two occasions she and appellant had gone to the First Valley Bank to see who was there and to examine the floor plan. On one occasion prior to the robbery, Heckman had returned home to find appellant in her living room in possession of a green duffle bag, handcuffs, rubber gloves, a dark ski mask, a pair of old tan work boots and a .357 Magnum.

The Commonwealth also elicited testimony from John Hall, appellant's prison mate. Hall testified that appellant had related the manner in which he had staked out the Bank to learn the times when the Bank employees would arrive and depart. In relating the events of the robbery, appellant had told Hall that he was wearing blue jeans, an Army coat which covered a T-shirt on which the words "Assault Force or Attack Force" appeared, a ski mask, and gloves. He also offered that he had used a .357 Magnum to commit the robbery. Hall related that appellant had told him of an alibi which he intended to use concerning the Days Inn in Tennessee.

Appellant testified on his own behalf that he had left Pennsylvania on either February 6, 1987 or February 7, 1987 for a fishing trip to Tennessee. He said that he had arrived in Tennessee on the evening of February 9, 1987, and had slept in his van that evening. He said that on the night of February 10, 1987 he had been unable to contact his former wife and as a result had spent the night at the Days Inn. The credibility of this testimony, of course, was

630

for the jury to determine. The jury could, as it did, reject appellant's version of the events and accept as true the evidence presented by the Commonwealth.

 The evidence was also sufficient to permit a finding of reckless endangerment of another person. The evidence, if believed, showed that the robber had entered the Bank and displayed a "long-barrel," "large caliber handgun revolver." Cannavo testified that she had seen the revolver which had a "round cylinder with the bullets in it." See: *Commonwealth v. Rivera*, 349 Pa.Super. 303, 503 A.2d 11 (1985) (evidence that gun was pointed at victims and used to threaten them was sufficient to support inference that robbers had placed victims in situation where risk of death or serious bodily injury was real and not merely apparent even though Commonwealth failed to show by direct evidence that gun had been loaded).

 Appellant next contends that the photographic arrays shown to Toni Pulcini, the neighbor woman who identified appellant in the vicinity of the Bank prior to the robbery, and Jay Slegel, who identified appellant as being near the Bank following the robbery, were unnecessarily suggestive and should have been suppressed because the other individuals in the arrays did not resemble appellant. These photographic displays have not been included in the record. It is the appellant's responsibility to provide a complete and comprehensive record to the reviewing court for the purposes of appeal. *Commonwealth v. Williams*, 357 Pa.Super. 462, 466, 516 A.2d 352, 354 (1986). See: Pa.Rules of Appellate Procedure. Chapter 19—Preparation and Transmission of Record and Related Matters. In the absence thereof, we rely on the trial court's detailed description of the photo arrays and find no merit in appellant's claim.

 Next, appellant argues that the trial court erred in failing to suppress the inculpatory statements allegedly made by appellant to John Hall, a prison mate at the Northampton County Prison. He argues that because Hall

had been an informant for the Commonwealth in other cases, he, appellant, was subjected to custodial interrogation. Any statements made to Hall, he argues, were subject to suppression because of the absence of appropriate *Miranda*[5] warnings. In addition, appellant contends that he was denied his Sixth Amendment right to counsel during interrogation by Hall. Although Hall had worked as an informant in other cases, he had not been requested by police to interrogate appellant, nor had he been promised favorable treatment for giving testimony against Feflie. Therefore, his legal status was not different than any other prisoner who may have elicited appellant's "jailhouse confession." See: *Commonwealth v. Rhoades*, 364 Pa.Super. 54, 527 A.2d 148 (1987), *allocatur denied*, 521 Pa. 611, 557 A.2d 343 (1989) (not violation of defendant's Sixth Amendment rights where incriminating statement made to prison mate who was acting on his own initiative and without promise of benefit from Commonwealth and who had been placed in adjoining cell by happenstance and not design). See also: *United States v. Hicks*, 798 F.2d 446 (11th Cir. 1986), *cert. denied*, 479 U.S. 1035, 107 S.Ct. 886, 93 L.Ed.2d 839 (1987) (not violation of defendant's Sixth Amendment rights where incriminating statements made to prison mate who had not been "planted" and who acted without instruction by law enforcement officials). Similarly in the instant case, the incriminating statements made by appellant were not elicited by and did not involve state action.

In the recent case of *Illinois v. Perkins*, — U.S. —, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990), an undercover agent, posing as a fellow cellmate, had been placed in Perkins' cellblock for the purpose of gaining information about an unsolved murder. The informant was successful in obtaining Perkins' confession to the murder. Perkins objected to the use of this confession, however, because no *Miranda* warnings had been given prior to the informant's conversation with him. The Court held that the tactic used to elicit a

5. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

voluntary confession from a suspect did not violate the constitutional guarantee against self-incrimination. Considering the free exchange of conversation existing between inmates, the Court held that *Miranda* warnings were not required when the suspect was unaware that he was speaking to a law enforcement officer and gave a voluntary statement. Although the facts in *Perkins* are different than those in the instant case, the following language is pertinent.

The warning mandated by *Miranda* was meant to preserve the privilege during "incommunicado interrogation of individuals in a police-dominated atmosphere." ... The essential ingredients of a "police-dominated atmosphere" and compulsion are not present when an incarcerated person speaks freely to someone that he believes to be a fellow inmate. Coercion is determined from the perspective of the suspect.... When a suspect considers himself in the company of cellmates and not officers, the coercive atmosphere is lacking....

. . . .

*Miranda* was not meant to protect suspects from boasting about their criminal activities in front of persons whom they believe to be their cellmates. This case is illustrative. Respondent had no reason to feel that undercover agent Parisi had any legal authority to force him to answer questions or that Parisi could affect respondent's future treatment. Respondent viewed the cellmate-agent as an equal and showed no hint of being intimidated by the atmosphere of the jail. In recounting the details of the Stephenson murder, respondent was motivated solely by the desire to impress his fellow inmates. He spoke at his own peril.

*Id.* at ——, 110 S.Ct. at 2397–2398, 110 L.Ed.2d at 250–252.

■ Appellant next contends that evidence found as a result of the search of his former wife's residence should have been suppressed because the police failed to announce their purpose prior to entering. The information which had been given to the police in Tennessee was that the suspect-

ed robber was armed. During their all night surveillance of Feflie's former wife's residence, moreover, police had learned that there were children in the house. The next morning, after children had been seen leaving the house, the police approached the back door of the residence. A woman stepped out from the back door and the police yelled into the house through the open back door to announce their presence before they entered. Officer Ashe explained who he was and requested Feflie to come downstairs. Feflie was in fact in the house and complied with the officer's request. Under these circumstances, there is no merit to appellant's contention that police conduct rendered the arrest unlawful.

■ Absent exigent circumstances, a police officer executing a warrant must give notice of his identity and announce his purpose prior to entering a private residence. See: *Commonwealth v. Kitchener*, 351 Pa.Super. 613, 617–618, 506 A.2d 941, 943 (1986), quoting *Commonwealth v. DeMichel*, 442 Pa. 553, 277 A.2d 159 (1971) (plurality opinion). See also: *Commonwealth v. Stanley*, 498 Pa. 326, 334, 446 A.2d 583, 587 (1982). The purpose of the "knock and announce" requirement is to prevent resistance to lawful authority based on an occupant's efforts to protect his privacy expectation against the unauthorized entry of persons unknown to him. It gives the individual a chance to surrender the premises peacefully in the face of lawful authority. *Commonwealth v. Beard*, 501 Pa. 385, 461 A.2d 790 (1983); *Commonwealth v. Norris*, 498 Pa. 308, 446 A.2d 246 (1982); *Commonwealth v. DeMichel, supra.*

In *Commonwealth v. Eliff*, 300 Pa.Super. 423, 446 A.2d 927 (1982), the Court set forth alternative tests to determine the existence of exigent circumstances. The first test, as initially proposed in *Dorman v. United States*, 435 F.2d 385 (D.C.Cir.1970), listed a number of factors to be examined. Among the factors considered by the *Dorman* court were: (1) the gravity of the offense, (2) whether the suspect was reasonably believed to be armed, (3) the degree to which probable cause existed beyond minimum warrant require-

ments, (4) whether there was strong reason to believe the suspect was in the premises to be entered, (5) the likelihood of the suspect's escape, (6) whether the opportunity for peaceable entry was offered, and (7) the time of entry. *Commonwealth v. Eliff, supra* 300 Pa.Super. at 439, 446 A.2d at 935. The alternative test, as set forth in *United States v. Flickinger,* 573 F.2d 1349 (9th Cir.1978), *cert. denied,* 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1978), adopted a more flexible "totality of the circumstances" approach. *Commonwealth v. Eliff, supra* 300 Pa.Super. at 439–440, 446 A.2d at 935.

Under either standard, there is no basis for disturbing the finding of exigent circumstances by the suppression court. The police were aware of the potential that appellant was armed with a .357 Magnum. They also knew that there had been children in the house, and suspected that others remained. Police conduct, after the back door had been opened, belies any flagrant attempt on their part to flaunt the "knock and announce" rule. The police entertained a reasonable belief that appellant was armed, since the offense had been committed with a weapon merely three days before and because no weapon had been found at the scene. Given all that had come to the knowledge of police prior to execution of the arrest warrant, it is clear that they acted reasonably and that appellant's arrest was lawful.

■ Appellant also contends that evidence seized following his arrest was subject to suppression because the Tennessee police had arrested appellant without obtaining an arrest warrant in Tennessee. Because the arresting officers had received a National Crime Information Center (NCIC) teletype of the Pennsylvania arrest warrant, these NCIC printouts were of sufficient reliability to establish probable cause for arrest without additional warrant. See: *Commonwealth v. Evans,* 343 Pa.Super. 118, 128–129, 494 A.2d 383, 388 (1985); *Commonwealth v. Riley,* 284 Pa.Super. 280, 285–286, 425 A.2d 813, 815–816 (1981).

 Appellant next contends that the trial court allowed the Commonwealth, over objection, to refer to a note which Heckman had written to herself in which she detailed the method which appellant intended to use in robbing the bank. This was error, appellant argues, because the note had not been disclosed during pre-trial discovery. The trial court determined that the prosecutor had been unaware of the note prior to trial; and, therefore, granted the defense a short continuance to investigate the same and prepare a response. A trial court has broad discretion in choosing an appropriate remedy for a discovery violation. See: *Commonwealth v. Williams*, 389 Pa.Super. 489, 493–494, 567 A.2d 709, 711 (1989). See also: *Commonwealth v. Gordon*, 364 Pa.Super. 521, 540, 528 A.2d 631, 641 (1987), *allocatur denied*, 517 Pa. 621, 538 A.2d 875 (1987); *Commonwealth v. Palmer*, 319 Pa.Super. 56, 58, 465 A.2d 1050, 1052 (1983). Pa.R.Crim.P. 305 E provides that:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

By granting a short continuance, the trial court properly exercised its discretion to avoid any prejudice to appellant. The late production of the letter, therefore, does not warrant the grant of a new trial. See: *Commonwealth v. Jacobs*, 501 Pa. 139, 460 A.2d 728 (1983) (continuance granted where it was ascertained during trial that Commonwealth had failed to disclose identity of eyewitness); *Commonwealth v. Smith*, 490 Pa. 329, 416 A.2d 494 (1980) (new trial not required when Commonwealth failed to disclose witness identity until mid-trial where defendant given time to prepare and no prejudice shown).

Similarly, the trial court did not err in allowing the Commonwealth to call Joseph Tamandl and Sandra Watras as rebuttal witnesses even though their identities had not been disclosed prior to trial.[6] The admission of rebuttal testimony is within the discretion of the trial court. *Commonwealth v. Mathis,* 317 Pa.Super. 362, 370, 464 A.2d 362, 367 (1983). The provisions of Pa.R.Crim.P. 305 require the Commonwealth to disclose the identity of eyewitnesses. There is no comparable provision which requires the Commonwealth to disclose rebuttal witnesses who are not eyewitnesses. The Commonwealth is not required to disclose the names of all witnesses. See: *Commonwealth v. Colson,* 507 Pa. 440, 463, 490 A.2d 811, 823 (1985), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986); *Commonwealth v. Bey,* 294 Pa.Super. 229, 237, 439 A.2d 1175, 1179 (1982).

Finally,[7] appellant advances a multi-faceted argument which challenges numerous discretionary aspects of sentencing. However, he has failed to comply with Pa.R. A.P. 2119(f), which requires that a concise statement of the reasons relied upon for allowance of such a review be included in his appellate brief. The Commonwealth has objected to this defect in appellant's procedure and asks that we deny review of these sentencing issues on appeal. We are constrained to agree. The Commonwealth's position is well taken. See: *Commonwealth v. Tuladziecki,*

6. Tamandl testified to procedures in the prison, and Watras rebutted appellant's alibi evidence.

7. We have also rejected the following issues raised by appellant:
 1. Whether the trial court erred in denying appellant's motion for change of venue?
 2. Whether the trial court erred in refusing to grant a mistrial based on references to drug use by appellant?
 3. Whether the trial court erred in permitting testimony regarding appellant's prior criminal record?
 4. Whether the trial court erred in failing to permit appellant's testimony to be re-read to the jury?
 5. Whether appellant was denied effective assistance of counsel as a result of trial counsel's failure to make a timely motion to dismiss pursuant to Rule 1100?
 These issues have been fully discussed and correctly decided in the opinion authored by the trial court.

513 Pa. 508, 522 A.2d 17 (1987); *Commonwealth v. Krum,* 367 Pa.Super. 511, 533 A.2d 134 (1987) (en banc). Our own review of the sentencing proceedings, moreover, confirms that there is no substantial issue regarding the appropriateness of the sentence.

The judgment of sentence is affirmed.

POPOVICH, J., files a concurring opinion.

POPOVICH, Judge, concurring:

While I join the majority's conclusion that John Hall was not serving as an agent of the Commonwealth when he elicited appellant's "jailhouse confession" and conveyed it to the authorities, I believe this conclusion resolves the suppression issue and further discussion is unnecessary. See *Commonwealth v. Rhoades,* 364 Pa.Super. 54, 527 A.2d 148 (1987), *allocatur denied,* 521 Pa. 611, 557 A.2d 343 (1989). Accordingly, I believe the majority's citation to *Illinois v. Perkins,* —— U.S. ——, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990), is misleading under these facts.

Resolving both the Fifth and Sixth Amendment arguments, the majority found persuasive: (1) that John Hall, appellant's prison mate, was not acting at the behest of the police when he obtained appellant's "jailhouse confession;" and (2) that he was not promised favorable treatment for giving testimony against appellant. To that, I will add two additional observations. First, the record indicates that John Hall initiated communications with the District Attorney's office vis a vis a letter indicating that he wished to speak with the person handling appellant's prosecution. (N.T. suppression hearing of September 18, 1987, at 29). Second, nothing can be gleaned from the record to conclude that Hall was placed strategically in the prison so as to elicit a confession. In fact, Hall's cell was on a different tier in the prison. (N.T. 392–95, 400–03). As such, I agree with the majority's conclusion that the informant's legal status was no different than any other prisoner who may have elicited defendant's "jailhouse confession."

With respect to both the Fifth and Sixth Amendment arguments, the fact that the informant was acting on his own initiative is dispositive. See *Rhoades*, 527 A.2d 148. We need not inquire into the nuances of the differing standards of "interrogation" and "deliberate elicitation" under the Fifth and Sixth Amendments, since instantly we do not have the "state action" necessary to invoke the protections of either amendment. Compare *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980) (deliberate elicitation found where the State intentionally creates a situation likely to induce defendant to make incriminating statements), with, *Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985) (Sixth Amendment not violated when, by luck or happenstance the State obtains incriminating statements), *United States v. Hicks*, 798 F.2d 446 (11th Cir.1986), *cert. denied*, 479 U.S. 1035, 107 S.Ct. 886, 93 L.Ed.2d 839 (1987) (despite fact that informant worked as a government informant in the past, no Sixth Amendment problem where cellmate informant was not deliberately planted to elicit confession), and, *Commonwealth v. Rhoades*, supra 364 Pa.Super. at 57, 527 A.2d at 150 (following *Hicks*).

Once we conclude that Hall was not serving as an agent for the Commonwealth, our analysis should end. The majority's citation to *Perkins* is misleading in that it runs counter to our conclusion that the informant's legal status was no different from any other prisoner acting on his or her own initiative. We must remember that *Perkins* stands for the narrow proposition that "an *undercover law enforcement officer posing as a fellow inmate* need not give *Miranda* warnings to an incarcerated suspect before asking questions that may elicit an incriminating response." *Perkins*, 110 S.Ct. at 2399 (emphasis added). Consequently, our conclusion that Hall was not serving as an agent for the Commonwealth forecloses all need to reach the question of whether a confession to an undercover state agent invokes the protections of the Fifth and Sixth Amendments. Ac-

cordingly, to the extent the majority embraces the *Perkins* doctrine under these facts, I concur only in finding that the confession was competent evidence under the theory that Hall was not serving as an agent for the Commonwealth.