[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 19, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-10215
Non-Argument Calendar

_____

D. C. Docket No. 06-00116-CR-T-26-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES RICHARD CATON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 19, 2008)**

Before BIRCH, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

James Richard Caton appeals his convictions on the following charges:

(1) distribution of cocaine base, 21 U.S.C. § 841(a)(1) and (b)(1)(C) ("Count One"); (2) possession of an unregistered firearm, 26 U.S.C. §§ 5861(d), 5871 ("Count Two"); (3) possession of a firearm not identified by a serial number, 26 U.S.C. §§ 5861(d), 5871 ("Count Three"); (4) possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A) ("Count Four"); and (5) distribution of five grams or more of cocaine base, 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii)("Count Five"). Caton argues that the district court committed plain error in admitting testimony and items concerning uncharged, drug-related activity into evidence and in utilizing an improper verdict form. We disagree and AFFIRM the judgment of the district court.

## I. BACKGROUND

A federal grand jury returned an indictment charging Caton with Count One, Count Two, Count Three, Count Four and Count Five. Caton pleaded not guilty to the charges. R4-2. He was subsequently tried and convicted on all counts in a two-day jury trial. R11-12. He was sentenced to 70 months of imprisonment on Counts One, Two, Three and Five, to run concurrently, and 60 months of imprisonment on Count Four, to run consecutive to his sentence on the other counts. R1-68 at 2. Caton now appeals his convictions on all five counts.

At trial, Detective Alejandro Angulo, an undercover law enforcement officer

2

from the Sheriff's Office in Polk County, Florida, testified that he purchased crack cocaine and a sawed-off shotgun from Caton. R11 at 104-06, 113, 118-21. Angulo, accompanied by a confidential informant, arrived at Caton's home and followed Caton into what appeared to be the master bedroom. Id. at 112-13. As he made his way to the master bedroom, Angulo observed three males loitering just inside the threshold of the residence. Id. at 111. Once inside the bedroom, Caton closed the door, locked it and then retrieved three rock-like substances (believed by Angulo to be crack cocaine) from a small night stand near his bed. Id. at 109-13. Caton handed Angulo one of the rock-like substances and then began smoking another. Id. at 113. Caton stated that "this crack is good, so good that it makes me feel that I could take on the police by myself." Id.

Caton persistently attempted to get Angulo to smoke the crack which Caton had handed him earlier. Angulo repeatedly declined. Caton became angry and so, when Caton requested him to smoke once again, Angulo distracted Caton by asking to see the sawed-off shotgun. Id. at 114-17. Angulo pretended to smoke the crack as Caton retrieved the shotgun. Id. at 117. Caton brought out a shotgun with a jagged edge, removed a round of ammunition that had been in the shotgun, and handed both the shotgun and the ammunition to Angulo. Id. at 118-19. Angulo then purchased the shotgun from Caton. Id. at 121.

3

Angulo then asked Caton whether he had any crack. Id. at 125. Caton left the bedroom and returned approximately three minutes later with crack that had "just finished cooking." Id. at 125-26. Angulo paid Caton for the crack and Caton indicated that he would be able to get more crack in the future. Id. at 127. As they were walking out of Caton's house, Angulo, although instructed by Caton to not look in the bathroom, nevertheless saw two men in the bathroom smoking something out of a beer can that had been fashioned in a way that is typically used to smoke crack. Id. at 129-30.

Four days later, Angulo contacted Caton in order to place an order for more crack. Id. at 131-32. Angulo met Caton in Caton's driveway and Caton told him to come inside the house as the crack had not yet arrived. Id. at134-35. Angulo and Caton went to the same bedroom in which the previous transaction had taken place. Id. at 135. Inside the room, a female was lying on the bed smoking what appeared to be crack. Id. at 135-36. Angulo left the premises after being told that the crack would not be available for a while. Id. at 137.

Caton called Angulo the next day and told him that the crack had arrived. Id. at 139. Angulo returned to Caton's house and purchased crack cocaine from him. Id. at 140-41. Caton was arrested on 14 February 2006. Id. at 145-46. A search warrant for his house was executed the same day. Id. at 145. There were no

4

objections to any questions that Angulo was asked during direct examination nor were there any objections to any exhibits that were introduced into evidence during the course of Angulo's testimony.

After Angulo's testimony, the government called Francine Medders. Id. at 183. Medders testified that she had observed Caton smoking crack cocaine in the past and that he had offered crack cocaine to her on two occasions. Id. at 187-88. There were no objections to this testimony. At the conclusion of Medder's testimony, the district court provided the jury a limiting instruction.[1] Id. at 200-01.

The government then called Detective Corey Lanier of the Polk County Sheriff's office. Id. at 201-02. Lanier testified about Caton's arrest and referred to "two pipes" that were found by the police during the course of the arrest. Id. at 212-13. There were no objections to this testimony. After Lanier, Leron Strong, an employee with the Lakeland Police Department, testified for the government. Id. at 215-16. Strong testified that during the course of executing the search warrant for Caton's residence, he found "what appeared to be a drug ledger" on a

---

[1] The court instructed the jury that "it must not consider any of this evidence in deciding if Mr. Caton committed the acts charged in the [i]ndictment." Id. at 201. The court then instructed that, if the jury found beyond a reasonable doubt that Caton committed the charged acts, it could then consider evidence of similar acts that were allegedly committed on other occasions in order to determine: (1) "whether [Caton] had the state of mind or intent necessary to commit the crimes charged in the [i]ndictment;" (2) "whether he acted according to a plan or in preparation for commission of a crime;" or (3) "whether he committed the acts for which he is on trial by accident or mistake." Id.

5

dresser in Caton's bedroom.  Id. at 217.  The alleged ledger was then entered into evidence without objection.  Id. at 220-21.  The district court then reminded the jury of its previous limiting instruction and told the jury to apply that instruction to the testimony of both Lanier and Strong.  Id. at 224.

Two additional government witnesses then testified about items seized during the execution of the search warrant for Caton's residence.  Officer Jeremy Wharton of the Polk County Sheriff's office stated that he seized two glass pipes and several plastic baggies that "[t]ypically ... [are] used to package certain amounts of drugs."  Id. at 225, 230-35.  Detective Michael Smith of the Lake Wales Police Department testified that, during the search,  he found two small bags of marijuana beneath the sofa pillows of a couch in Caton's living room.  Id. at 238-40.   Caton raised no objections to this testimony nor did he object to the introduction into evidence of any of the items seized during the execution of the search warrant.  After Smith's testimony, the district court issued another limiting instruction concerning the limited use of the evidence related to the execution of the search warrant.  Id. at 243-44.

After Caton rested his case, the district court inquired whether there were any objections to the proposed instructions.  There were none.  R12 at 63.  Nor did Caton offer any additional instructions.  After closing arguments, the district court

instructed the jury:

> Now, before you can find [Caton] guilty of that offense as charged in Count [Four], all of the following facts must be proved beyond a reasonable doubt:
>
> One, that he committed the drug trafficking offense charged in Count [One] of the Indictment....
>
> Second, that during the commission of that offense ... the Defendant knowingly carried or possessed a firearm as charged; and, finally, that the Defendant carried the firearm in relation to, or possessed the firearm in furtherance of the drug trafficking offense in Count [One].
>
> ....
>
> To carry or possess a firearm means that the Defendant either had a firearm on or around his person, or transported, conveyed or controlled a firearm in such a way that it was available for immediate use if the Defendant so desired during the commission of the drug trafficking offense charged in Count [One].
>
> And to carry a firearm in relation to an offense means that there must be a connection between the Defendant, the firearm and the drug trafficking offense in Count [One], so that the presence of the firearm was not accidental or coincidental, but facilitated the crime by serving some important function or purpose of the criminal activity.
>
> To possess a firearm in furtherance of an offense means something more than mere presence of a firearm. It must be shown that the firearm helped, furthered, promoted or advanced the offense in some way.
>
> Now, the indictment charges that the Defendant knowingly carried a firearm during and in relation to a drug trafficking offense, and possessed a firearm in furtherance of a drug trafficking offense. It is charged, in other words, that the Defendant violated the law as charged in Count [Four] in two separate ways.
>
> It is not necessary, however, for the Government to prove that the Defendant violated the law in both of those ways. It is sufficient if the Government proves beyond a reasonable doubt

that the Defendant knowingly violated the law in either way. But, in that event, you must unanimously agree upon the way in which the Defendant committed the violation.

R12 at 55-57. The court then repeated its instructions concerning the limited use of evidence related to the search of Caton's house. Id. at 57-58.

Without objection, the district court provided the jury a verdict form that stated as to Count Four of the indictment:

As to the offense of carrying and possessing a firearm during and in relation to and in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c),
We, the Jury, find the defendant, **JAMES RICHARD CATON**:
Not Guilty _____                              Guilty _____

CM/ECF for the Middle District of Florida, No. 8:06-cr-116, Doc. 56 at 2. The jury marked the verdict form "Guilty" as to Count Four. Id.

On appeal, Caton raises three arguments, which we address in turn: (1) the district court committed plain error by admitting evidence of Caton's uncharged, drug-related activity; (2) the district court committed plain error by allowing a detective to identify an item seized from Caton's residence as a "drug ledger" and thereafter admitting the item into evidence; and (3) the district court committed plain error by submitting the verdict form to the jury on Count Four.

8

## II. DISCUSSION

A.  Whether the District Court Committed Plain Error by Admitting Evidence of
Caton's Uncharged, Drug-related Activity

Because Caton did not challenge the admission of any evidence of Caton's

uncharged, drug-related activity in the district court, we review only for plain error.

See United States v. Edouard, 485 F.3d 1324, 1343 (11th Cir. 2007).  "Under plain

error review, there must be (1) an error, (2) that is plain, and (3) that affects the

defendant's substantial rights."[2]  Id. at 1343 n.7.  At trial, the district court admitted

evidence of drug-related activity tied to Caton but not charged in the indictment.

Such evidence included the use of illegal drugs by Caton, illegal drugs and drug

paraphernalia found in Caton's residence during the execution of the search

warrant and the use of illegal drugs by others in Caton's residence.

Federal Rule of Evidence 404(b) provides that

> [e]vidence of other crimes, wrongs, or acts is not
> admissible to prove the character of a person in order
> to show action in conformity therewith. It may,
> however, be admissible for other purposes, such as
> proof of motive, opportunity, intent, preparation,
> plan, knowledge, identity, or absence of mistake or
> accident . . . .

[2] "For an error to affect substantial rights, 'the error must have been prejudicial: It must have affected the outcome of the district court proceedings.'"  Id. (quoting United States v. Olano, 507 U.S. 725, 734, 113 S.Ct. 1770, 1778 (1993)).  "If the first three conditions of the plain error test are met, we may correct the error if it 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'"  Id. (quoting United States v. Shelton, 400 F.3d 1325, 1328-29 (11th Cir. 2005)).

9

Fed. R. Evid. 404(b). Before we apply Rule 404(b), however, we must first determine whether the evidence of the uncharged, drug-related activity tied to Caton is extrinsic or intrinsic. We have held that "evidence of criminal activity other than the charged offense is *not* 'extrinsic' under Rule 404(b), and thus falls outside the scope of the Rule, when it is '(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense.'"[3] Edouard, 485 F.3d at 1344 (quoting United States v. Baker, 432 F.3d 1189, 1205 n.9 (11th Cir. 2005)). "Nonetheless, evidence of criminal activity other than the charged offense, whether inside or outside the scope of Rule 404(b), must still satisfy the requirements of Rule 403."[4] Id.

Here, Angulo's account of what transpired during his various interactions

---

[3] "Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive[,] and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." Edoaurd, 485 F.3d at 1344 (quoting United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998)). "And evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an 'integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted.'" Id. (quoting United States v. Foster, 889 F.2d 1049, 1053 (11th Cir. 1989)).

[4] See Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

with Caton does not constitute extrinsic evidence and, therefore, falls outside the scope of Rule 404(b) because it was "linked in time and circumstances with the charged crime[s]," it "form[ed] an integral and natural part of an account of the crime[s]," and Caton has not shown that it resulted in unfair prejudice or jury confusion under Rule 403. Edouard, 485 F.3d at 1344.

The remaining testimony and physical evidence of uncharged, drug-related activity is correctly characterized as extrinsic. We employ a three-part test in regard to the admissibility of extrinsic evidence under Rule 404(b): (1) the evidence must be relevant to an issue other than character; (2) sufficient proof must exist to find that the defendant committed the prior act; and (3) the probative value of the evidence cannot be substantially outweighed by its undue prejudice. United States v. Perez, 443 F.3d 772, 779 (11th Cir. 2006). We discern no plain error in the district court's judgment because the evidence in question was either relevant to Caton's intent to distribute narcotics or demonstrated an absence of mistake or accident.[5] In addition, the testimonial and physical evidence admitted by the district court was sufficient to meet the second prong of our Rule 404(b) test.

---

[5] See United States v. Zapata, 139 F.3d 1355, 1358 (11th Cir. 1998) ("A defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue."). Additionally, we have held that "evidence of prior personal drug use to prove intent in a subsequent prosecution for distribution of narcotics" may be admitted. United States v. Butler, 102 F.3d 1191, 1196 (11th Cir. 1997).

11

Finally, the district court gave three sets of limiting instructions as to the jury's permissible use of evidence relating to uncharged, drug-related activity, which alleviated any unfair prejudice that may have resulted.

B. <u>Whether the District Court Committed Plain Error by Allowing a Detective to Identify an Item Seized from Caton's Residence as a Drug Ledger and Thereafter Admitting such Item into Evidence</u>

We apply the same analytical framework for Caton's second argument that we used in considering his first. The district court admitted testimony about an alleged "drug ledger" found by the police in Caton's residence during the execution of a search warrant and subsequently allowed the ledger itself to be admitted into evidence. Because the record supports a characterization of the ledger as extrinsic evidence, we apply our three-part Rule 404(b) test. In light of our decision in <u>United States v. Hicks</u>, 798 F.2d 446, 451 (11th Cir. 1986), in which we held that a trial court did not abuse its discretion in admitting into evidence various diary entries reflecting drug transactions, we conclude that the ledger was relevant to the issue of intent for the offenses with which Caton was charged.[6]

Caton's argument that the probative value of the ledger was substantially outweighed by the danger of unfair prejudice is without merit. Much as we

---

[6] Caton does not argue that the testimony concerning the ledger was inaccurate or that there was an insufficient basis to conclude that the item was a drug ledger.

concluded in Hicks, the extrinsic evidence was "not so heinous that the jury would be likely to convict for the extrinsic offense[] rather than the charged one[] and the evidence was unlikely to confuse or mislead the [jury]." Id. at 452. Additionally, the district court's limiting instructions sufficiently dispelled any lurking danger of unfair prejudice.

C.  Whether the District Court Committed Plain Error by Submitting the Verdict Form to the Jury on Count Four

Caton argues that the district court erred in submitting the verdict form with respect to Count Four, as the form did not provide the jury with a means by which to indicate whether it found that Caton violated 18 U.S.C. § 924(c)(1)(A) by either (1) carrying a firearm "during and in relation to" a drug trafficking offense, or (2) possessing a firearm "in furtherance of" such an offense.  Moreover, Caton argues that the verdict form did not allow the jury to indicate whether it was unanimous in finding that the same type of violation had occurred.  In addition, he contends that the jury likely convicted him under the statute's "carry" language, but the evidence was insufficient to support such a conviction because Caton only retrieved the shotgun when Angulo asked him to do so.  Accordingly, he argues that, as one alternative ground for a conviction under § 924(c)(1)(A) is not sustainable, and it is not clear from the record whether the jury found him guilty under the "in furtherance of" or "during and in relation to" language, we should

13

vacate and remand for a new trial on Count Four.

Because Caton did not raise any objection in the district court, we again review only for plain error.  See Edouard, 485 F.3d at 1343.  Caton's arguments concerning the verdict form for Count Four do not persuade.  He points to no controlling law from the Supreme Court or our circuit requiring the use of a different verdict form and does not take issue with the sufficiency of the district court's jury instruction as to Count Four.  Indeed, Caton correctly concedes that any argument that the law requires the use of a different verdict form runs counter to our decision in United States v. Verbitskaya, 406 F.3d 1324, 1334 (11th Cir. 2005)(holding that a district court need not instruct a jury to unanimously agree on which of the government's four alternative theories supported the verdict) .  The district court's instructions on Count Four unambiguously inform the jury that Count Four was charged in two separate ways and that they must unanimously agree upon the way in which Caton committed the violation.  We may presume that the jury followed the district court's instructions and unanimously found that Caton was guilty under at least one of the ways of violating § 924(c)(1)(A).[7]  Finally, we decline Caton's invitation to speculate on the internal mechanics of the jury's deliberations regarding Count Four.  Accordingly, we conclude that the

_____

[7] United States v. Williams, 526 F.3d 1312, 1321 (11th Cir. 2008)("A jury is presumed to follow the district court's instructions.").

14

district court did not commit plain error in submitting the verdict form for Count Four to the jury.

## CONCLUSION

Caton argues that the district court committed plain error in admitting testimony and items concerning uncharged, drug-related activity into evidence and in utilizing an improper verdict form. We conclude that the district court did not commit plain error. Accordingly, we affirm the judgment of the district court.

**AFFIRMED.**