**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Terrance McRAE, Appellant.**

Superior Court of Pennsylvania.

Argued June 23, 2010.

Filed Sept. 17, 2010.

Kenneth B. Hone, Doylestown, for appellant.

Stephen B. Harris, Asst. Dist. Atty., Doylestown, for Com., appellee.

BEFORE: STEVENS, GANTMAN, and ALLEN, JJ.

OPINION BY STEVENS, J.:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Bucks County after a jury convicted Appellant of Possession with Intent to Deliver a Controlled Substance ("PWID"), Possession of a Controlled Substance, and Possession of Drug Paraphernalia. Sentenced to a mandatory sentence of five to ten years of incarceration with a Recidivism Risk Reduction Incentive (RRRI) sentence of fifty months to ten years, Appellant argues that: (1) unlawful police entry into a third party's home required the suppression of evidence obtained from the search of his person incident to his arrest inside that home; and (2) the court's responsive instruction to a deliberating jury's question of what "delivery" entails risked a PWID verdict based not on his intent with respect to the drugs found in his possession but on extraneous drugs found elsewhere in the third party's home. We affirm.

The trial court provides an apt recitation of the factual and procedural history of the case as follows:

Appellant was charged by Criminal Complaint on January 2, 2009, with Possession with Intent to Deliver a Controlled Substance, Possession of a Controlled Substance, Possession of Drug Paraphernalia, and Criminal Conspiracy.

A suppression hearing was held before the [trial court] on May 13, 2009, wherein Appellant moved to compel the production of the arrest warrant for Elaine

Carmen, which permitted the police to enter the house where Appellant was arrested. Appellant also moved to disclose the identity of a confidential informant. The defense sought to suppress the entry into the home where Appellant was arrested for lack of probable cause based on Elaine Carmen's warrant. The defense also moved to suppress the statements made by Appellant to police, as involuntary. Following a hearing, we denied all of Appellant's pre-trial motions. Suppression, N.T. 5/13/09 pp. 73–75.

Appellant's case proceeded to trial before a jury on May 13, 2009. On May 14, 2009, the jury returned a verdict finding Appellant guilty of Possession with Intent to Deliver a Controlled Substance, Possession of a Controlled Substance, and Possession of Drug Paraphernalia. Count Four, charging Criminal Conspiracy, was nol prossed at the start of trial. Trial, N.T. 5/13/09 p. 3. Viewing the evidence in the light most favorable to the Commonwealth, as the verdict winner, the following relevant testimony was presented at trial: On January 2, 2009, at approximately 10:25 p.m., Morrisville Borough police officers Lee Matthews and Wayne Apice, along with two other officers, arrived at 23 Philadelphia Avenue (hereinafter sometimes referred to as the "residence") in Morrisville Borough, Bucks County, Pennsylvania, for the purpose of serving an arrest warrant on Elaine Carmen, an occupant of that residence. Trial, N.T. 5/13/09, p. 27. Officer Apice, a twenty-four year veteran of the Morrisville Borough Police Department, testified that the residence had been under police surveillance for possible drug trafficking, and on that night, the officers observed Elaine Carmen, a known wanted subject [according to the National Crime Information Center ("NCIC") database which listed an outstanding arrest warrant in her name], enter the residence. N.T. at 43.

Officer Apice testified that he knocked on the door and the door was opened by Kenneth Thomas, also a resident of that address. The residence is a small efficiency apartment and, from this location standing in the doorway, Officer Apice could clearly see Elaine Carmen and the three other individuals in the apartment: Kenneth Thomas, Amanda Jenner, and Appellant. At that time, the police officers entered the residence to apprehend Elaine Carmen. N.T. at 44.

Officer Matthews testified that after entering the residence to serve the arrest warrant on Elaine Carmen, he noticed Appellant. N.T. at 28. Officer Matthews testified that he was very familiar with the Appellant from a prior incident and had personal information that there was an outstanding warrant in Morrisville Borough for Appellant's arrest. At that time, Officer Matthews handcuffed Appellant and took him into custody. N.T. at 28. When Officer Matthews patted down Appellant for weapons he felt what he believed to be a large bag in Appellant's right pocket. When the officer emptied Appellant's pockets he discovered a large clear plastic bag containing numerous small blue translucent bags. N.T. at 29–30, Exhibit C1. The officer saw that the bags contained a white rocky substance, which he suspected to be crack cocaine. N.T. at 29. Officer Matthews retrieved the bags of suspected drugs and approximately $300.00 from Appellant's pockets. On a table inside the apartment, there was also a small amount, approximately one gram, of a white substance later determined to be cocaine. N.T. at 81. Officer Matthews seized the suspected drugs and money, placed Appellant into

a police car and took him to the police station. At the station, Officer Matthews turned over the money and suspected drugs to Officer Apice, who secured the evidence.

When Appellant arrived at the Police Station, Officer Apice advised him of his Miranda rights and Appellant signed a Miranda Waiver form. N.T. at 51, Exhibit C–3. Thereafter, Appellant told Officer Apice that he originally purchased the suspected cocaine in Camden. Appellant stated that 60% of the quantity was for distribution and the other 40% was for personal use. N.T. at 53. Appellant, with the help of his girlfriend, Amanda Jenner, who was also in custody at the police station, made a written statement admitting that the drugs found on him were his, that he had sold some of them, and that the drugs were initially purchased to be sold for profit, with 60% of the drugs for sale and 40% for personal use. Exhibit C–4.
* * *

Based on the above testimony, the jury concluded that Appellant was guilty of Possession with Intent to Deliver a Controlled Substance, Possession of a Controlled Substance and Possession of Drug Paraphernalia.

On August 10, 2009, this Court sentenced Appellant on Count One, Possession with Intent to Deliver, to incarceration in a State Correctional Institution for not less than five (5) years nor more than ten (10) years with an alternative RRRI sentence of fifty (50) months to ten (10) years, a fine of $30,000.00 and costs. Appellant's sentence reflects the mandatory minimum term pursuant to 18 Pa.C.S.A. § 7508(a)(3)(ii), as Appellant was convicted of Possession with Intent to Deliver more than ten grams of a controlled substance and this being his second conviction for a drug offense of this type. No further penalty was imposed on Counts Two and Three of the criminal information.

At the sentencing hearing, Appellant moved for extraordinary relief alleging that the instruction provided to the jury improperly expanded Appellant's criminal liability to actual delivery. N.T. 8/10/09 pp. 2–5. Appellant also requested that the Court reconsider its pre-trial ruling with respect to the arrest warrant. Both motions were denied.

On August 11, 2009, defense counsel filed a Motion to Modify and Reconsider Sentence. On August 19, 2009, Appellant filed a pro se post-sentence motion to modify sentence. On September 18, 2009, a hearing on the motion for reconsideration was held before the undersigned, at which Appellant was represented by trial counsel. Appellant again moved for extraordinary relief, alleging that the arrest warrant for Elaine Carmen was invalid and contesting the Commonwealth's failure to produce it. Appellant also moved for reconsideration and modification of his sentence to less than the mandatory. Appellant's motions were denied. Appellant filed his appeal to the Superior Court of Pennsylvania from the denial of post-sentence motions on October 6, 2009.

Appellant raises two issues for our review:

I. DID THE SUPPRESSION COURT ERR IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE SEIZED FOLLOWING AN UNLAWFUL ENTRY INTO A RESIDENCE WHERE THE POLICE FAILED TO PRESENT A WARRANT, LACKED PERSONAL KNOWLEDGE OF THE BASIS OF THE ALLEGED WARRANT, AND THE WARRANT WAS NOT SUBJECT TO ANY TYPE OF JUDI-

CIAL REVIEW DURING THESE PRE–TRIAL PROCEEDINGS IN DIRECT VIOLATION OF HIS RIGHT TO BE FREE FROM UNLAWFUL SEARCH AND SEIZURE AS SECURED BY ARTICLE 1, § 8 OF THE PENNSYLVANIA CONSTITUTION AND THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION?

II. DID THE TRIAL COURT ERR WHEN IT EXPANDED CRIMINAL LIABILITY DURING ITS JURY INSTRUCTIONS BY INCLUDING ACTUAL DELIVERY AS A BASIS FOR FINDING GUILT AND REFUSING TO INSTRUCT THE JURY THAT THEY COULD ONLY FIND THIS APPELLANT GUILTY IF THEY BELIEVED HE POSSESSED DRUGS THAT HE INTENDED TO SELL IN THE FUTURE?

Brief for Appellant at 4.

■ Appellant first argues that the court erroneously denied his motion to suppress evidence obtained from a personal search incident to his arrest, which occurred after police had entered the home to execute an arrest warrant upon a third party whom Appellant was visiting. Because police neither possessed nor had personal knowledge of the warrant on the third party, and had only confirmed its existence through a NCIC computer bulletin, appellant contends police lacked authority to enter the third party's home such that the exclusionary rule should apply to his case.[1] As this Court has held that police may rely on an NCIC computer report on an arrest warrant without further verifying the status of the warrant, see *intra*, the foundation to Appellant's argument is flawed.

■ We review the trial court's decision according to the following standard:

Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Taggart,* 997 A.2d 1189, 1193 (Pa.Super.2010).

At trial, Appellant expressed his position that police must verify the very basis to the underlying arrest warrant before they act on a NCIC report:

**DEFENSE COUNSEL:** Your Honor, we need the ability to attack whether or not whatever was there was valid. Anything can be typed into a computer. That doesn't eliminate someone's Consti-

---

1. At no time in this matter has either the Commonwealth or the suppression court addressed whether Appellant, merely a casual visitor to the premises entered, was first required to legitimize his challenge to the police entry by showing he held a reasonable expectation of privacy in the premises, before the court determined whether police entry was in fact lawful. Accordingly, we decline to consider this issue *sua sponte*. *See Commonwealth v. Govens,* 429 Pa.Super. 464, 632 A.2d 1316, 1320 (1993) (rejecting Commonwealth's belated attempt to raise issue of casual visitor defendant's expectation of privacy in home subjected to police entry, where Commonwealth failed to raise issue before suppression court).

tutional protection. It doesn't permit an entry into someone's house. What needs to be addressed is not that computer and what was on that entry, but whether or not the basis for that entry, if it existed, was based upon probable cause. If it was not based on probable cause presented, considered by a neutral and detached magistrate, then that is not valid and the entry is unlawful.

N.T. 5/13/09 at 14–15. In his appellate brief, Appellant expresses this same argument as follows:

Here, none of the foregoing could occur because the police had never seen, reviewed, or established the underlying basis of knowledge, the facts, the magistrate, or the timing for the issuance and execution of the warrant. [citation to Suppression Hearing notes of testimony omitted]. Rather, the police assert that they can merely rely on some clerk's brief entry into NCIC and the clerk's decision to destroy the "warrant," thereby circumventing the constitutionally mandated judicial review. [citation to notes of testimony omitted]. The adoption of such a rule would completely circumvent and undermine state and federal constitutional protections.

* * *

Simply claiming that there was a warrant issued at some point in time and NCIC entry entered by someone, is not sufficient to withstand judicial review of any police conduct. It is constitutionally impermissible to allow police to claim reliance upon unproduceable [sic] and unreviewable documents because such a rule creates and insulates judicial review of any police conduct if the police merely utter the magic words that 'I relied upon a police bulletin and the warrant has been destroyed.'

* * *

Clearly the police actions in entering the residence cannot be jusitified by merely stating that someone entered some information in NCIC on some date after something may have been submitted to some judge, about someone, yet that is exactly what the suppression court below ruled.

Brief for Appellant at 11, 15–16.

This Court has, however, held that NCIC entries alone are of sufficient reliability to provide officers with probable cause to arrest without the addition of the warrant upon which the NCIC entry was based. *See Commonwealth v. Feflie*, 398 Pa.Super. 622, 581 A.2d 636, 643 (1990) (affirming denial of motion to suppress evidence obtained during search incident to arrest executed after police entry into third party's home without arrest warrant; NCIC report of outstanding arrest warrant provides probable cause to arrest). Accordingly, we reject Appellant's contention that an NCIC bulletin on an outstanding arrest warrant may not provide probable cause to arrest unless police first verify the validity of the underlying warrant.

■ In his second issue, Appellant argues that the trial court expanded criminal liability during its jury instructions by including actual delivery as a basis for finding guilt and refusing to instruct the jury that they could only find guilt for PWID if they believed he possessed drugs intended for delivery in the future. The record belies Appellant's claim.

When reviewing a challenge to jury instructions, the reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. A new

trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury. *Commonwealth v. Fletcher*, 604 Pa. 493, 986 A.2d 759, 792 (2009).

The instruction at issue occurred during jury deliberations, when the jury submitted a question to the court asking for clarification with respect to the court's initial instruction on PWID: [2]

"May we please have an interpretation and reiteration of the law in regards to possession with intent to deliver a controlled substance? What is intent to deliver? What does that constitute? What does delivery involve?

N.T. 5/14/09 at 69.

The court began by reiterating the four elements to a PWID offense and the jury's obligation to find each element proven beyond a reasonable doubt. N.T. at 70. In dispute is the court's election to answer the final question about "delivery," wherein the court stated in pertinent part that "delivery involves the transfer of the [illegal] substance from one person to another person or other persons." N.T. at 71. The court immediately followed this definition by explaining what "intent to deliver" means, and then reiterating that to convict on PWID, the jury would have to find "that defendant had a specific intent or that it was his goal, as I mentioned in going over the elements of the offense, to deliver or transfer that substance or that item to another person or persons." N.T. at 72.

Defense counsel requested sidebar discussion, in which he argued that the court's decision to instruct on "delivery" risked confusing the jury to think mistakenly that it could base a PWID conviction not only on his intent to deliver the co-

caine possessed in his pants pocket, but also on cocaine present on the third party's kitchen table as if it had already been delivered by Appellant. The prosecutor countered that he had not mentioned the cocaine discovered in plain view on the table and had confined his prosecution of the PWID charge to the large bag of cocaine recovered from Appellant's pocket. In fact, argued the prosecutor, it was defense counsel who clouded the issue during his opening, cross-examination of Officer Matthews, and closing by referring to the absence of buy money on Appellant as proof it was not he who had delivered the cocaine on the table to a confidential informant and, consequently, that he also had no intent to sell the cocaine in his pocket. Only after defense counsel made this reference did the prosecutor confirm with the next witness, Officer Apice, that the cocaine on the table formed the basis for charging the others present in the home with possession. A review of the trial transcript confirms the prosecutor's account. See N.T. 5/13/09 at 28–32, 34–36, 44–49, 59.

The court's recollection was that the Commonwealth's theory on PWID was clearly confined to the large bag containing some fifty smaller bags of cocaine recovered from Appellant's pants pocket and that the cocaine on the table "was not an issue in this case." N.T. 5/14/09 at 74. Nevertheless, the court specifically asked defense counsel if he would prefer an instruction reiterating that only the substances allegedly seized from Appellant's pocket were relevant to the PWID charge:

> **THE COURT:** Would you be satisfied, Mr. Hone [Defense Counsel], if I mentioned that the only substances at issue in this case are the substances allegedly seized from his pocket?

---

**2.** Appellant offered no objection to the initial PWID instruction.

DEFENSE COUNSEL: I think that—

PROSECUTOR: That would do you more harm.

DEFENSE COUNSEL:—kind of confuses the way the evidence went in, I guess is my concern. I think the Commonwealth's theory is not based—their theory is not based upon sale, but based upon the intent to sell, not any actual transfer.

THE COURT: Is that what you want me to make clear to the jury, that we are not talking about any actual delivery here in this case? Is that—

DEFENSE COUNSEL: That my circumstantial evidence argument is that if they think it's the same guy they wouldn't have had that—

PROSECUTOR: I think we should leave it for now and if something comes up again, address it then.

THE COURT: Mr. Hone, I don't quite understand what you are asking for and I think it might confuse the jury. So, again, do you want to try to state what you would like me to tell the jury one more time?

DEFENSE COUNSEL: I think the jury should be instructed that in order to find him guilty based upon the Commonwealth's theory they need to find that he specifically intended to sell these drugs in the future.

THE COURT: I think I have stated that to the jury clearly, and I—again, that does not require actual sale, as you know, delivery. I think I will leave it as it is.

(sidebar discussion concluded)

THE COURT: Members of the jury, you are now excused to begin your deliberations.

N.T. at 75–76.

The record thus establishes that the additional instruction defense counsel ulti-mately sought would have been identical to the instruction just given by the court. Indeed, the court's final instruction to the jury stated that in order to convict on PWID, the jury would have to find, in addition to the other elements of the offense, that the "defendant had a specific intent or that it was his goal, as I mentioned in going over the elements of the offense, to deliver or transfer that substance or that item to another person or persons." N.T. at 72. The court cannot be faulted for refusing to repeat an instruction that it had just given in clear terms to the jury.

Moreover, Appellant takes the court's instruction on "delivery" out of the context in which it was presented—as a component part to the "intent to deliver" element of PWID—and argues incorrectly that the court had effectively converted the PWID charge to an actual delivery charge. No expansion of criminal liability occurred by an instruction explaining to the jury what the "deliver" in "intent to deliver" means. As the court therefore committed no error in clarifying this term for the jury's benefit, we reject Appellant's final argument as devoid of merit.

Judgment of sentence is affirmed.