J-S38042-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
FRANKLIN VARGAS, :
:
Appellant : No. 190 EDA 2013

Appeal from the Judgment of Sentence Entered December 14, 2012,
In the Court of Common Pleas of Bucks County,
Criminal Division, at No. CP-09-CR-0001710-2012.

BEFORE: FORD ELLIOTT, P.J.E., BOWES and SHOGAN, JJ.

MEMORANDUM BY SHOGAN, J.: **FILED MAY 20, 2015**

Appellant, Franklin Vargas, appeals from the judgment of sentence

entered in the Court of Common Pleas of Bucks County. We affirm.

The trial court summarized the factual history of this case as follows:

In December of 2010, the Thirty-Second Statewide Investigating Grand Jury began hearing evidence concerning a large scale heroin distribution ring operating in six counties within the Commonwealth — Philadelphia, Chester, Delaware, Montgomery, Perry and Bucks. The Grand Jury issued three Presentments: Presentment No. 2, issued March 23, 2011, Presentment No. 8, issued June 21, 2011 and Presentment No. 18, issued October 13, 2011. Those Presentments collectively recommended the Attorney General arrest and prosecute 31 individuals, including [Appellant], identified as belonging to the "Black Widow" heroin distribution ring, for violations of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780-113(a), the Corrupt Organizations statute and other offenses under the Crimes Code as a result of the widespread dissemination of heroin stamped "Black Widow" in southeast Pennsylvania.

Pedro Vega and Noel Vega distributed large quantities of heroin throughout southeast Pennsylvania as members of the "Black Widow" organization. Their supplier was Fausto Ezequiel Valdez-Cordero, identified as the head of that organization. [Appellant] acted as a "drug runner," the person who transported drugs and money between suppliers and purchasers, for Fausto Ezequiel Valdez-Cordero. [Appellant] worked as a "runner" for Valdez-Cordero for close to a two-month long period in 2009. During that time, the Vega brothers were receiving heroin deliveries two to three times per day. When their heroin supply ran out, one of the Vega brothers would call Fausto Ezequiel Valdez-Cordero. Fausto Ezequiel Valdez-Cordero would then send [Appellant] to the Vega brothers with a new supply. [Appellant] often met with other "Black Widow" members Jose Matos or Jose Sanchez in order to resupply the Vega branch of the distribution network. The heroin delivered by [Appellant] was customarily supplied to the Vega brothers two "racks" at a time; each rack would be wrapped in magazine paper with clear tape and would be attached to one another. During this period of time, [Appellant] utilized a white Toyota Corolla to complete the deliveries. The Vegas either paid Fausto Ezequiel Valdez-Cordero directly or gave the money to [Appellant] to deliver to Fausto Ezequiel Valdez-Cordero, often confirming receipt of the payment with Valdez-Cordero by telephone. The Vegas made a profit of $3,000 to $6,000 per day.

After the summer of 2009, co-conspirator Saviel Mieses Guzman replaced [Appellant] as the "runner" between Fausto Ezequiel Valdez-Cordero and the Vega brothers and continued to do so until his arrest in February of 2011. In mid-February of 2011, for approximately one week, [Appellant] again began delivering heroin to the Vega brothers for Fausto Ezequiel Valdez-Cordero. At that time, [Appellant] resided in a home that was owned by Pedro Vega. [Appellant] utilized a black four-door Chrysler with limousine tags to conduct this business. During this period of time, the Vega brothers paid [Appellant] at the time each supply of heroin was delivered. [Appellant's] participation in the drug deliveries was confirmed by police surveillance. On February 23, 2011, law enforcement executed a search warrant on [Appellant's] residence[, 2424 N. Reese Street in Philadelphia]. Inside the residence police found two cellular phones and $7,660 in cash.

Trial Court Opinion, 4/2/13, at 2-4 (internal citations and footnotes omitted).

On May 23, 2012, Appellant filed an omnibus pre-trial motion seeking to suppress the evidence found at 2424 N. Reese Street on the basis that the search warrant was not supported by probable cause. The trial court denied that motion.

Following a jury trial with co-defendant Darnell Ballard ("Ballard"), Appellant was convicted of possession with intent to deliver a controlled substance ("PWID")-heroin, criminal conspiracy to deliver heroin, corrupt organizations, and corrupt organizations-conspiracy. On December 14, 2012, Appellant was sentenced to an aggregate term of incarceration of nine to twenty-five years. Appellant filed a timely notice of appeal.

Appellant presents the following issues for our review:

[1.] Did the trial court err in granting the Commonwealth's motion for joinder at the start of trial?

[2.] Did the trial court erred [sic] in finding the affidavit of probable cause established the requisite probable cause necessary to search [Appellant's] residence at 2424 North Reese Street, Philadelphia, Pennsylvania?

[3.] Did the trial court err in [sic] when, during the trial, it reversed its [sic] on a *Motion in Limine* ruling which precluded the Commonwealth from introducing documentation which identified [Appellant] as having various names?

Appellant's Brief at 8.

Appellant first argues that the trial court's joinder of the co-defendants' cases for trial was improper because the defenses were

conflicting and the risk of jury confusion was great. Appellant's Brief at 14. Appellant asserts that separate conspiracies existed within the organization, and the co-defendants were involved in separate conspiracies; thus, Appellant argues that the co-defendants were not involved in the same criminal activity. *Id.* at 16. Appellant also contends that the jury was not able to separate the evidence because they were inundated with evidence that supported the conclusion that "everyone was selling heroin." *Id.* at 17. Appellant maintains that he was prejudiced by being tried with co-defendant Ballard[1] because Ballard was the individual who ordered the supplies of heroin, and that is the voice that the jury heard over and over again in the courtroom. *Id.* at 17. Appellant asserts that because the evidence established his mere presence during these deliveries, he was prejudiced by being tried with the individual who consistently re-ordered the supplies of heroin. *Id.*

We have stated the following regarding joinder:

Joinder and severance of separate indictments for trial is a discretionary function of the trial court; consequently, the trial court's decision is subject to review for abuse of that discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. Consequently, an abuse of discretion consists not merely of errors in judgment by the trial court, but instead contemplates action unsupported by the evidence, at

_____

[1] We note that at times in his brief, Appellant incorrectly refers to his co-defendant as "Bullard." Appellant's Brief at 15-17.

odds with governing law, or arising from improper motives personal to the judge.

***Commonwealth v. Brookins***, 10 A.3d 1251, 1255 (Pa. Super. 2010) (internal citations and quotations omitted). Furthermore, Pa.R.Crim.P. 582 provides: "Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Pa.R.Crim.P. 582(A)(2). Conversely, the rules permit severance of charges of defendants already joined when it appears that a defendant may be prejudiced by a joint trial. Pa.R.Crim.P. 583. Reading these rules together, our Supreme Court established the following test for severance matters:

> Where the defendant moves to sever offenses not based on the same act or transaction...the court must therefore determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

***Commonwealth v. Collins***, 703 A.2d 418, 422 (Pa. 1997). The prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime. ***Commonwealth v. Lauro***, 819 A.2d 100, 107 (Pa. Super. 2003).

The "prejudice" of which Rule [583] speaks is not simply prejudice in the sense that appellant will be linked to the crimes for which he is being prosecuted, for that sort of prejudice is ostensibly the purpose of *all* Commonwealth evidence. The prejudice of which Rule [583] speaks is, rather, that which would occur if the evidence tended to convict [the] appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

*Id.* (quoting **Collins**, 703 A.2d at 423 (internal citations omitted, emphasis in original)).

In addressing joinder of trials of co-defendants, our Supreme Court has stated the following:

Where . . . the crimes charged against each defendant arise out of the same facts and virtually all of the same evidence is applicable to both defendants, this Court, as well as the United States Supreme Court, have indicated a preference to encourage joint trials to conserve resources, promote judicial economy, and enhance fairness to the defendants:

It would impair both the efficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability.

Given this preference, the burden is on defendants to "show a real potential for prejudice rather than mere speculation."

> "Separate trials of co-defendants should be granted only where the defenses of each are antagonistic to the point where such individual differences are irreconcilable and a joint trial would result in prejudice." Although antagonistic defenses are a factor for a trial court to consider in determining whether to grant a motion to sever, "the fact that defendants have conflicting versions of what took place, or the extent to which they participated in it, is a reason for rather than against a joint trial because the truth may be more easily determined if all are tried together."

*Commonwealth v. Rainey*, 928 A.2d 215, 231-232 (Pa. 2007) (internal citations omitted).

Furthermore, "joint trials are preferred where conspiracy is charged."

*Commonwealth v. Housman*, 986 A.2d 822, 834 (Pa. 2009). The statute defining conspiracy specifically addresses the issue of joinder as follows:

> **(d) Joinder and venue in conspiracy prosecutions.--**
>
> > (1) Subject to the provisions of paragraph (2) of this subsection, two or more persons charged with criminal conspiracy may be prosecuted jointly if:
> >
> > > (i) they are charged with conspiring with one another; or
> > >
> > > (ii) the conspiracies alleged, whether they have the same or different parties, are so related that they constitute different aspects of a scheme of organized criminal conduct.

18 Pa.C.S. § 903(d)(1).

In the case *sub judice*, the trial court concluded that joinder was appropriate and provided the following explanation:

The testimony of two members of this conspiracy, Pedro and Noel Vega, established that [Appellant] physically delivered heroin to the Vegas and other members of the "Black Widow" heroin distribution ring while acting as "runner" for the head of the "Black Widow" organization, Fausto Ezequiel Valdez-Cordero, on an on-going basis in 2009 and again in February of 2011.

The evidence established that co-defendant Darnell Ballard, in conjunction with family member Victor Ballard, participated in the purchase of "Black Widow" heroin from Fausto Gabriel Valdez-Cordero, identified as the number two member in the "Black Widow" hierarchy, which the Ballards then sold in Bucks County.

[Appellant] and [Ballard] were charged with entering into a conspiracy with the same group of individuals. The goal of that conspiracy was the large scale distribution of "Black Widow" heroin for profit. The crimes charged against each defendant therefore arose from the same series of acts or transactions. Specifically, proof of the crimes charged against each defendant required introduction of the same evidence regarding the existence and operation of the "Black Widow" heroin distribution ring, an organization wherein individuals have defined roles, each designed to effectuate the organization[']s illegal business activities. Proof of the existence and nature of that organization required evidence of extensive electronic surveillance, the testimony of organization members and physical evidence, including large amounts of heroin, packing materials, ink stamps and cash, seized as a result of the execution of multiple search warrants. The conspiracies alleged were so related that they constituted different aspects of the same "scheme or organized criminal conduct" and therefore were appropriately joined under the joinder provisions of the Rules of Criminal Procedure and the Conspiracy statute.

The fact that [Appellant] and [Ballard] did not personally know one [another] does not alter this analysis. "If a person guilty of conspiracy...knows that a person with whom he conspires to commit a crime has conspired with another person or persons to commit the same crime, he is guilty of conspiring with such other person or persons, to commit such crime whether or not he knows their identity." 18 Pa.C.S. § 903(b).

-8-

Finally, [Appellant] has failed to demonstrate that he was prejudiced by the joinder. He is, therefore, not entitled to relief. Commonwealth v. Brown, supra.

Trial Court Opinion, 4/2/13, at 5-7.

We agree. Here, Appellant has failed to establish that severance was necessary. First, the evidence presented regarding charges against both defendants related to their roles in the "Black Widow" heroin ring, and as such, evidence of the offenses would be admissible at trial for the other.[2] Second, evidence presented at trial detailed the role each co-defendant played in the organization; thus, separation of the evidence by the jury was possible and the likelihood of jury confusion was minimal. As to the third element, Appellant has failed to establish that he suffered such prejudice as to require a separate trial. **Collins**, 703 A.2d at 422. Additionally, the parties' individual defenses were not antagonistic of each other's defenses, and their claims that they participated in the distribution ring to varying degrees is not a sufficient basis on which to sever. **Rainey**, at 231-232. Furthermore, the evidence presented at trial established that both defendants were involved in conspiracies "so related that they constitute

---

[2] Evidence of other crimes is admissible to demonstrate: (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) the identity of the person charged with the commission of the crime on trial. **Collins**, 703 A.2d at 422-423. Additionally, evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts. **Id.**

different aspects of a scheme of organized criminal conduct." 18 Pa.C.S. § 903(d)(1)(ii). Thus, we conclude that the trial court did not abuse its discretion in joining the co-defendants' cases for trial.

Appellant next contends that the trial court erred in denying the motion to suppress and concluding that the affidavit provided the requisite probable cause supporting the issuance of a search warrant for 2424 North Reese Street. Appellant's Brief at 14. Appellant asserts that because the affidavit makes no mention of drugs coming from, or the proceeds going to 2424 North Reese Street, that there are no facts upon which a neutral authority could conclude that contraband would be found at that residence. *Id.* at 19.

We review the trial court's decision according to the following standard:

> Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. McRae*, 5 A.3d 425, 429 (Pa. Super. 2010).

In *Commonwealth v. Jones*, 988 A.2d 649 (Pa. 2010), our Supreme Court addressed the requirements for a valid search warrant:

Article I, Section 8 and the Fourth Amendment each require that search warrants be supported by probable cause. "The linch-pin that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause." ***Commonwealth v. Edmunds***, 526 Pa. 374, 586 A.2d 887, 899 (1991) (quoting ***Commonwealth v. Miller***, 513 Pa. 118, 518 A.2d 1187, 1191 (1986)). "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." ***Commonwealth v. Thomas***, 448 Pa. 42, 292 A.2d 352, 357 (1972).

In ***Illinois v. Gates***, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court established the "totality of the circumstances" test for determining whether a request for a search warrant under the Fourth Amendment is supported by probable cause. In ***Commonwealth v. Gray***, 509 Pa. 476, 503 A.2d 921 (1986), this Court adopted the totality of the circumstances test for purposes of making and reviewing probable cause determinations under Article I, Section 8. In describing this test, we stated:

> Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in ***Gates***, the task of an issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.... It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish

-11-

probable cause in a common-sense, non-technical manner.

\* \* \*

[Further,] a reviewing court [is] not to conduct a *de novo* review of the issuing authority's probable cause determination, but [is] simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant.

*Commonwealth v. Torres*, 564 Pa. 86, 764 A.2d 532, 537–38, 540 (2001).

*Id.* at 655. "In determining whether a search warrant is supported by probable cause, appellate review is confined to the four corners of the affidavit." *Commonwealth v. Galvin*, 985 A.2d 783, 796 (Pa. 2009).

A review of the affidavit in support of the warrant reflects the following factors. The affidavit consists of four pages outlining various drug transactions occurring during the week of February 15, 2011, and on, specifically, February 23, 2011. Commonwealth's Exhibit CS-2, probable cause affidavit, 2/23/11, at 3-6 (unnumbered pages). The affidavit references the ongoing narcotics investigation of a heroin distribution ring conducted by Noel Vega, Pedro Vega, Jose Sanchez and Jose Morales. *Id.* at 3. The investigating agents had information that the Vega brothers were distributing the heroin utilizing the services of Jose Sanchez. *Id.* The agents were also advised that the supplier of the racks of heroin to Jose Sanchez would be a Hispanic male operating a dark-colored Chrysler 300M

bearing limousine registration, referred to as "Dominican Taxicabs." ***Id.*** Additionally, the affidavit included the following statement:

> At approximately 11:59 A.M. [on February 23, 2011], Agents observed Sanchez enter the passenger side of a dark colored Chrysler 300M bearing a Pennsylvania Registration number LM-26290 at the corner of 6[th] Street and Somerset Street. Agents followed the Chrysler around the block and Jose Sanchez exited the Chrysler at the corner of Fairhill Street and Somerset Street. Agents observed Jose Sanchez walk back to 2800 N. 5[th] Street and enter the location using a key. Roving surveillance followed the dark colored Chrysler to the 2400 block of N. Reese Street and observed the operator, described as a Hispanic male, late 20's, approximately 5'9", bushy dark hair with a long goatee, wearing a multi colored shirt and blue jeans exit the vehicle and enter 2424 N. Reese Street. Agent Riley conducted a property assessment that revealed the registered owner of the property located at 2424 N. Reese Street is Noel Vega.

***Id.*** at 4.

Based on the above averments, we conclude that given the totality of circumstances, the affidavit clearly established "there [was] a fair probability that contraband or evidence of a crime [would] be found in" 2424 N. Reese Street. ***Jones***, 988 A.2d at 655. As noted in the affidavit, Jose Sanchez was suspected of distributing heroin. The agents had information that the driver of a dark-colored Chrysler 300M, bearing limousine registration, would be delivering heroin to Jose Sanchez. On February 23, 2011, using surveillance, the agents observed Sanchez enter a dark-colored Chrysler 300M bearing limousine registration. After the driver left the company of Jose Sanchez, he entered 2424 N. Reese Street. Upon investigation, it was

-13-

discovered that 2424 N. Reese Street was registered to Noel Vega, a suspected participant in the heroin distribution ring. Thus, we agree with the trial court's conclusion that the warrant was supported by probable cause. The trial court did not err in denying Appellant's motion to suppress.

In his final claim, Appellant argues that the trial court erred during trial when it reversed its previous ruling on a motion *in limine* precluding documentation identifying Appellant as having various names.[3] Appellant's Brief at 8. Although not clearly argued, Appellant seems to be asserting that the prosecutor's questioning of Appellant regarding Appellant's multiple names was a violation of the trial court's ruling. *Id.* at 20. Appellant maintains that trial counsel did not "open the door." *Id.* Although Appellant cites to what he defines as a series of questions by trial counsel, he does not provide a citation to the record wherein that exchange is memorialized or explain the relevance of this testimony in his claim. *Id.* at 19-20.

Appellant has failed to sufficiently develop this claim or cite to relevant legal authority in support of it. Our rules of appellate procedure require an appellant to support his or her argument with pertinent analysis, including citation to and discussion of relevant authority and facts of record. Pa.R.A.P. 2119. This Court will not become counsel for an appellant and develop arguments on an appellant's behalf, ***Commonwealth v. Gould***, 912 A.2d

---

[3] Appellant fails to identify the referenced trial court ruling or provide a citation to the record wherein this ruling is reflected.

869, 873 (Pa. Super. 2006), and waiver of an issue results when an appellant fails to properly develop an issue or cite to legal authority to support his contention in his appellate brief. ***Commonwealth v. Williams***, 959 A.2d 1252, 1258 (Pa. Super. 2008). Additionally, it is not this Court's responsibility to comb through the record seeking the factual underpinnings of a claim. ***Commonwealth v. Samuel***, 102 A.3d 1001, 1005 (Pa. Super. 2014). When deficiencies in a brief hinder our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived. ***Id.***; Pa.R.A.P. 2101. Because Appellant's failure to properly develop this issue hinders our ability to conduct meaningful appellate review, we find this issue waived.

Even if we were to ignore the defects and attempt to address this issue, however, we would conclude that it lacks merit. The trial court provided the following analysis on this issue:

> The Defendant next contends that [the trial] court erred in allowing the Commonwealth to question the Defendant about false identification found in the Defendant's residence. The Defendant further claims that the Commonwealth's questioning of the Defendant regarding his aliases went beyond what the court had ruled admissible. On direct examination the Defendant introduced employee identification cards and his temporary certificate to operate a limousine. While explaining the different names on those photo identifications, ie. Franklin Pichardo, Franklin Vargas and Franklin Pichardo Vargas, the Defendant testified that he "only [had] one name." N.T. 6/5/12, p. 128. Based upon this testimony, the Commonwealth sought to introduce an official Pennsylvania identification card and official drivers licenses issued to the Defendant in the name of

-15-

Marciel Perez Delgado. The court ruled that the Defendant opened the door to his use of an alias for purposes of impeachment but ruled that the identification cards themselves could not be used unless the Defendant denied that he used an alias and a false date of birth on cross-examination. N.T. 6/5/12, p. 186. When asked on cross-examination if he used the name Marciel Perez Delgado, the Defendant said that he did and volunteered that he needed false identification in order to purchase merchandise from a grocery store. He also volunteered that he obtained a fake birth certificate to procure a fake license. N.T. 6/5/12, p. 180. The court ruled that the Defendant opened the door to the inquiry regarding the fake identification cards. N.T. 6/5/12, pp. 180, 183-184.

The scope of cross-examination is within the discretion of the trial court and the court's decision will not be reversed absent an abuse of discretion. Commonwealth v. Britton, 380 A.2d 807, 810 (Pa.Super.1977) (citations omitted). In this case, the Defendant clearly opened the door to his use of an alias by volunteering to the jury that, "I only have one name." He again opened the door to the questioning regarding the multiple pieces of false identification found in a wallet seized from his residence when he volunteered information about obtaining false identification, since those false documents were inconsistent with the Defendant's explanation for why they were needed.

Trial Court Opinion, 4/2/13, at 12-13 (footnotes omitted).

To the extent that the trial court has been able to surmise Appellant's argument, we conclude that its determination is supported by the evidence of record and relevant legal authority. Thus, even if we were to address this issue, we would conclude that the trial court did not err in permitting the Commonwealth's questioning of Appellant regarding his various names.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/20/2015