J-S55020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| SHAWN N. MCCOY | |
| Appellant | No. 1713 MDA 2016 |

Appeal from the Judgment of Sentence September 7, 2016
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0003462-2015

BEFORE:  DUBOW, RANSOM, and STRASSBURGER, JJ.[*]

MEMORANDUM BY RANSOM, J.:                    **FILED OCTOBER 19, 2017**

Appellant, Shawn N. McCoy, appeals from the judgment of sentence of twenty-eight to sixty years, imposed September 7, 2016, following a jury trial resulting in his conviction for two counts of robbery, and one count each of criminal conspiracy, assault of a law enforcement officer, carrying firearms without a license, and escape.[1]  We affirm in part, vacate Appellant's conviction for escape, and remand for resentencing.

Late in the evening of April 7, 2015, Appellant, driving a white Hyundai Sonata, picked up his girlfriend, Sharayne Cook, to go out for drinks.  **See** Notes of Testimony (N.T.), 6/22/16, at 141-45.  They stopped at a gas station,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S. §§ 3701, 903(a), 2702.1(a)(2), 6106, and 5121, respectively.

where they bought fruit punch and ginger ale. *See* N.T., 6/22/16, at 145-47; N.T., 6/23/16, at 13. Ms. Cook wore sunglasses to cover a black eye she had received days earlier when Appellant hit her in the face with a gun. *See* N.T., 6/22/16, at 143-44. They went to Shady McGrady's bar, located on the 200 block of Verbeke Street, in the City of Harrisburg, Pennsylvania, where they met an acquaintance, Yusuf Blake. *Id.* at 147-48. All three left at closing time. *Id.* at 147-48. Appellant gave Ms. Cook the keys to the car, and she sat in the driver's seat. *Id.* at 152.

At 9:30 p.m., Jamie Jones and Duane Dunlap also visited Shady McGrady's. *See* N.T., 6/21/16, at 97-99; N.T., 6/22/16, at 33-35. They drank there until closing. *See* N.T., 6/21/16, at 100; N.T., 6/22/16, at 34. As they walked back to Mr. Dunlap's Mercedes Benz, Ms. Cook called out to them; they stopped to speak to her, but upon seeing Appellant and Mr. Blake get out of the car, Mr. Jones ran. *See* N.T., 6/21/16, at 100-101; N.T., 6/22/16, at 34-35, 152. Appellant chased Mr. Jones while Mr. Blake approached Mr. Dunlap. *See* N.T., 6/22/16, at 35.

Mr. Blake pointed his gun at Mr. Dunlap's chest and demanded his valuables. *See* N.T., 6/22/16, at 36-37. He took Mr. Dunlap's earrings, watch, rosary chain, ring, money, car keys, ID, and bank card. *See* N.T., 6/22/16, at 37. When Mr. Jones heard Mr. Dunlap ask, "My earrings too, bro?" he ran back towards the car. *See* N.T., 6/21/16, at 101-103. Appellant hit Mr. Jones twice in the head with a gun. *See* N.T., 6/21/16, at 103-04. After knocking Mr. Jones to the ground, Appellant took his hat, Polo jacket, $250.00,

and a bag of marijuana. **See** N.T., 6/21/16, at 104-05. While he was handing over his belongings, Mr. Jones observed that Appellant was a light-skinned black man with a tattoo on his neck. **See** N.T., 6/21/16, at 107, 144. During the robbery, Mr. Blake referred to Appellant as "Shizz." **Id.** at 100-106; N.T., 6/22/16, at 158.

Around 2:30 a.m., a local resident was awakened by loud yelling from the street, observed the robbery in progress, and called 911 to describe what he saw. **See** N.T., 6/21/16, at 19-21, 27. As he watched, Appellant got into the front passenger seat, and Mr. Blake into the back seat of the waiting Hyundai, which made a U-turn and fled east. **See** N.T., 6/21/16, at 22-23; N.T. 6/22/16, at 153-54.

Police Officer Angel Diaz, on patrol in a marked car, responded to the radio call regarding the robbery. **See** N.T., 6/21/16, at 36-37. Within two minutes, Officer Diaz and two other marked police cars saw the Sonata traveling northbound; Officer Diaz made a U-turn to follow it. **See** N.T., 6/21/16, at 38-39; N.T., 6/22/16, at 153-55. When the Sonata sped up and went through a red light, Officer Diaz activated his lights and sirens, and a high-speed chase ensued. **See** N.T., 6/21/16, at 39-40; N.T. 6/22/16, at 155. Officer Diaz saw Appellant, a light-skinned black male wearing a dark top, hang out of the passenger side window and fire a gun at the police car. **See** N.T., 6/21/16, at 42; N.T., 6/22/16, at 156-57. Officer Diaz gave chase, and Appellant continued to fire, damaging the transmission of the police car. **See** N.T., 6/21/16, at 43-45; N.T., 6/22/16, at 156-57. Eventually, Officer Diaz

- 3 -

lost track of the Hyundai but was advised by radio that suspects had fled eastbound on foot. *See* N.T., 6/21/16, at 40-44. Thereafter, Officer Diaz apprehended and arrested Mr. Blake and Ms. Cook. *See* N.T., 6/21/16, at 44. Officer Diaz observed Mr. Blake was of a darker complexion than the shooter. *See* N.T., 6/21/16, at 45-47.

After their arrest, Ms. Cook and Mr. Blake identified Appellant as the third person in the vehicle, and police began to search for him. *See* N.T., 6/23/16, at 122-24. Eventually, Appellant turned himself in to the custody of the police. *Id.* at 124-26.

Mr. Jones later identified Appellant as the man who had robbed him. *See* N.T., 6/21/16, at 109-112. At trial, Mr. Jones equivocated on his identification testimony and denied receiving threats. *See* N.T., 6/21/16, at 140-45. Subsequently, the Commonwealth presented the testimony of Assistant District Attorney Jennifer Hartlep to establish that Mr. Jones had experienced witness intimidation and threats on his life prior to trial and that he had previously stated that he was "100%" sure that Appellant was the robber. *See* N.T., 6/22/16, at 8-14.

Jade Harris testified that, in March 2015, she helped her friend, Autumn Sloane, rent a white Hyundai Sonata. *See* N.T., 6/21/16, at 147-50. Ms. Sloane did not return the car on time, and Ms. Harris subsequently discovered the Sonata had been used in a robbery. *Id.* at 150-51. The parties stipulated that, in March 2015, Autumn Sloane purchased a .40 caliber Taurus pistol. *See* N.T., 6/22/16, at 60-61. At trial, Ms. Sloane admitted that she bought

- 4 -

the gun for Appellant, who picked out the specific gun he wanted and took a picture of it with Ms. Sloane's telephone. *See* N.T., 6/22/16, at 64-70. Ms. Sloane also admitted that Appellant's nickname was "Shizz." *See* N.T., 6/22/16, at 77.

The Commonwealth presented additional evidence at trial. Mercedes Benz keys and a rosary belonging to Mr. Dunlap were recovered from the Hyundai, as well as an iPhone from the front passenger seat. *See* N.T., 6/23/16, at 54-57. The iPhone contained photographs of Appellant with a semi-automatic pistol tucked into his waistband and a tattoo visible on his neck, and of Appellant pointing a semi-automatic pistol. *See* N.T., 6/22/16, at 72-75.

Bullets and cartridge cases recovered from the scene were fired from the same gun; were consistent with bullets fired from a .40 caliber pistol; and could have been fired from a gun made by a number of manufacturers, including a Taurus. *See* N.T., 6/22/16, at 83-85. An empty case for a Taurus pistol was recovered from Ms. Sloane's house; paperwork within the case bore Appellant's fingerprints. *See* N.T., 6/23/16, at 77-80. Mixed DNA profiles were present on bottles recovered from the Hyundai; the major component on the ginger ale was consistent with Ms. Cook's DNA, and the major component on the fruit punch matched Appellant's DNA. *See* N.T., 6/22/16, at 121-23.

Following trial, the jury convicted Appellant of the aforementioned charges and acquitted him of criminal attempt–homicide and aggravated

assault.[2] The charge of possession of a firearm prohibited was *nolle prossed*, and the charge of flight to avoid apprehension was withdrawn.[3] The court sentenced Appellant to an aggregate of twenty-eight to sixty years of incarceration, including a twenty-year mandatory minimum sentence. Appellant filed a motion for modification of sentence, which the court denied.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court issued a responsive opinion.

On appeal, Appellant raises the following questions for our review:

I. Whether the imposition of the mandatory 20 – 40 year sentence, under 42 Pa.C.S.A. § 9719.1, for assault of a law enforcement officer, under 18 Pa.C.S.A § 2702.1(a), was constitutional under [*Alleyne v. United States*] and *Apprendi*?[4]

II. Whether the trial court erred in admitting Commonwealth's exhibits 70 and 71 depicting Appellant with a firearm, as unduly prejudicial and irrelevant?

III. Whether the trial court erred in permitting Attorney Hartlep to testify regarding Mr. Jones' statements to her prior and after the preliminary hearing as such testimony, *inter alia*, was impermissible rebuttal testimony regarding Mr. Jones' trial testimony?

IV. Whether the Commonwealth failed to present sufficient evidence to sustain Appellant's conviction for the two (2) counts

---

[2] 18 Pa.C.S. §§ 901(a) and 2702(a)(2).

[3] 18 Pa.C.S. §§ 6105(a)(1) and 5126(a).

[4] *Alleyne v. United States*, 133 S. Ct. 2151 (2013); *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000).

of robbery and conspiracy to robbery [sic] where the Commonwealth did not prove that the Appellant, *inter alia*, was the person who committed the acts?

V. Whether the Commonwealth failed to present sufficient evidence to sustain Appellant's convictions for assault on a law enforcement officer where the Commonwealth did not prove that the Appellant, *inter alia*, was the person who fired the shots?

VI. Whether the Commonwealth failed to present sufficient evidence to sustain Appellant's conviction for carrying a firearm without a license where the Commonwealth did not prove that the Appellant, *inter alia*, possessed a firearm?

VII. Whether the Commonwealth failed to present sufficient evidence to sustain Appellant's conviction for escape where the Commonwealth did not prove that the Appellant, *inter alia*, left official detention?

VIII. Whether the [trial court] erred in denying Appellant's post-sentence motion where the Appellant's sentence of 28-60 years was unreasonable and constitutes too severe a punishment in light of the gravity of the offense, the impact on the community, and Appellant's rehabilitative needs?

Appellant's Brief at 5-6 (underlining, unnecessary capitalization, and suggested answers omitted).

First, Appellant contends that his sentence of twenty to forty years of incarceration for assaulting a law enforcement officer is unconstitutional under ***Alleyne***. ***See*** Appellant's Brief at 25. Appellant argues that the statute in the instant case is no different than other statutes imposing mandatory minimum sentences and that no verdict slip or special instruction can cure its illegality. ***Id.*** at 27.

The Sentencing Code provides that a person convicted of assaulting a law enforcement officer, 18 Pa.C.S. § 2702.1(a), shall be sentenced to a

mandatory term of imprisonment of not less than twenty years. **See** 42 Pa.C.S. § 9719.1. Appellant's argument is meritless, as our Court has previously held that this mandatory sentence provision does not implicate **Alleyne**. **See Commonwealth v. Reid**, 117 A.3d 777, 785 (Pa. Super. 2015).

In **Reid**, we held that Section 9719.1 does not require proof of any additional elements beyond those already required to convict a defendant of assault on a law enforcement officer under the Crimes Code. **Id.** at 785. Further, the statute does not permit the court to apply a mandatory minimum sentence if the Commonwealth establishes the triggering fact by a mere preponderance of the evidence, which we have held unconstitutional under **Alleyne**. **Reid**, 117 A.3d at 785. The statute "simply describes the legislatively-required sentence" for an offender convicted of this crime. **Id.** at 786. Thus, we decline to find 42 Pa.C.S. § 9719.1 unconstitutional under **Alleyne**, and hold that Appellant's claim is meritless. **Id.** at 785.

Second, Appellant claims that the court erred in admitting photographs depicting Appellant with a firearm. **See** Appellant's Brief at 28. Appellant contends that the evidence was unduly prejudicial and irrelevant, as the firearm was not recovered. **Id.** at 28, 30.

With regard to these claims,

[t]he admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that

overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Woodard***, 129 A.3d 480, 494 (Pa. 2015) (quotation marks and citations omitted).

Generally, all relevant evidence is admissible, and evidence is relevant if it has "any tendency to make a fact more or less probable then it would be without the evidence." ***See*** Pa.R.E. 401-02. Relevant evidence may be excluded where its probative value is outweighed by the danger of unfair prejudice. ***See*** Pa.R.E. 403. While a weapon not specifically linked to a crime is generally inadmissible, the fact that "the accused had a weapon or implement suitable to the commission of the crime charged . . . is always a proper ingredient of the case for prosecution." ***See Commonwealth v. Robinson***, 721 A.2d 344, 351 (Pa. 1999). The Pennsylvania Supreme Court has noted further that

> [a]ny uncertainty that the weapon is the actual weapon used in the crime goes to the weight of such evidence. The only burden on the prosecution is to lay a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime . . . .
>
> Possession of a handgun may be relevant even if the particular gun possessed cannot be proven to be the one used in the crime. That it was possessed may allow the inference it could have been used.

***Commonwealth v. Christine***, 125 A.3d 394, 400 (Pa. 2015).

Exhibits 70 and 71 were photographs depicting 1) Appellant pointing a semi-automatic pistol with his hands obscuring the grip, part of the trigger,

and the trigger guard; 2) Appellant with a semi-automatic pistol tucked into his waistband, with the grip and slide visible. Although no gun was recovered in the instant case the ballistic evidence introduced at trial established that bullets and casings recovered at the scene were fired from the same .40 caliber pistol and that Taurus was a potential manufacturer. Testimonial evidence established that Ms. Sloane purchased a semi-automatic Taurus .40 caliber pistol for Appellant. Appellant's fingerprints were present on papers inside of the pistol case recovered from Ms. Sloane's home.

Appellant relies on two cases, **Robinson** and **Commonwealth v. Stokes**, 78 A.3d 644 (Pa. Super. 2013), to support his argument that the photographs were not properly admitted. However, both of these cases are distinguishable on their facts. In **Robinson**, the Supreme Court of Pennsylvania ruled that the trial court had erroneously admitted photographs of a 9mm Star gun where, though the murder had been committed with a 9mm gun, Star had been specifically excluded as a manufacturer. **See Robinson**, 721 A.2d at 351. In **Stokes**, the victim was shot with a .44 caliber gun, and the Commonwealth attempted to introduce an empty box of 9mm ammunition and four loose rounds of .32 caliber ammunition. **See Stokes**, 78 A.3d at 655. This Court held that the trial court erred in admitting the photographs to show that the defendant had a general familiarity with firearms, access to firearms, and skill in shooting. **Id.**

By contrast, in the instant case, the gun partially depicted in the photographs cannot be excluded as the gun used in the crime and, insofar as

- 10 -

it is visible, is consistent with other testimony and evidence introduced in the case. Accordingly, the trial court did not err in admitting the photographs, as the jury could reasonably infer the firearm was used during the commission of the crime. *See Woodard*, 129 A.3d at 494; *Christine*, 125 A.3d at 400.

Third, Appellant claims that the trial court erred in permitting Attorney Hartlep to testify regarding Mr. Jones' statements to her prior to and after the preliminary hearing, concerning 1) threats to his life, 2) his identification of Appellant, and 3) observations about Appellant's tattoo. *See* Appellant's Brief at 30. Essentially, Appellant contends that because the evidence was introduced to rebut the testimony of the Commonwealth's witness, it was improperly admitted as rebuttal. *Id.* at 30-31. In contrast, Commonwealth contends that the testimony regarding intimidation was properly admitted as impeachment evidence under Pa.R.E. 607, and that the testimony regarding identification was admissible as a prior statement of identification under Pa.R.E. 803.1(2). *See* Commonwealth's Brief at 14-17.

Initially, Appellant has waived his objection to Attorney Hartlep's testimony regarding his tattoos, as counsel stated during testimony that he "had no objection" if Attorney Hartlep wanted to testify that Mr. Jones told her that Appellant had a tattoo across his neck. *See* N.T., 6/22/16, at 6-7. Additionally, Appellant has waived his challenge to admission of Attorney Hartlep's testimony regarding threats to Mr. Jones' life due to his failure to specifically object during oral argument. *Id.*; Pa.R.A.P. 302(a). However,

- 11 -

Appellant challenges Attorney Hartlep's testimony regarding Mr. Jones' identification.

We first address Appellant's arguments. The admission of evidence is within the discretion of the trial court; the same is true for rebuttal evidence. ***See Woodard***, 129 A.3d at 494; ***see also Commonwealth v. Feflie***, 581 A.2d 636, 643 (Pa. Super. 1990). An abuse of that discretion by the trial court, and a showing of resulting prejudice, constitutes reversible error. ***See Commonwealth v. Glass***, 50 A.3d 720, 724-25. Where an error is harmless, reversal is not warranted. ***Robinson***, 721 A.2d at 350.

Here, the trial court opined that it was within its discretion to allow rebuttal evidence as to Mr. Jones' recollection of the identity of the perpetrator along with the tattoo identification. ***See*** Trial Court Opinion (TCO), 3/7/17, at 9. This conclusion is incorrect, however, as rebuttal evidence is properly admitted to rebut testimony elicited from an *opponent's* witness on cross-examination, and is limited to matters material to the issues presented in the case. ***See Commonwealth v. Kuder***, 62 A.3d 1038, 1054 (Pa. Super. 2013). Nevertheless, we may affirm a valid judgment based on any reason appearing of record. ***See Commonwealth v. Parker***, 919 A.2d 943, 948 (Pa. 2007).

Turning to the Commonwealth's arguments, we address its assertion that the testimony regarding Mr. Jones' prior statement of identification was admissible under Pa.R.E. 803.1(2), an exception to the rule against hearsay. Hearsay is an out of court statement offered to prove the truth of the matter asserted. ***See*** Pa.R.E. 801. Hearsay is inadmissible, subject to exceptions

provided by the Rules of Evidence. *See* Pa.R.E. 802. Pa.R.E. 803.1(2) provides that "a prior statement by a declarant-witness identifying a person or thing, made after perceiving the person or thing," is admissible, "provided that the declarant testifies to the making of the prior statement." *See* Pa.R.E. 803.1(2). In the instant case, Mr. Jones testified that he had previously told police he was 100% certain the robber was Appellant. *See* N.T., 6/21/16, at 109. A recording of his statement to police was played for the jury. *Id.* at 110. However, he did not testify that he had previously told Attorney Hartlep that he was 100% certain the robber was Appellant. Thus, this testimony was not properly admissible under Pa.R.E. 803.1(2).

Even so, the admission of the testimony was harmless error, as it was duplicative of the recorded statement already introduced. *See* ***Commonwealth v. Hardy***, 918 A.2d 766, 778 (Pa. Super. 2007) (noting that where evidence was already properly admitted, admission of the same testimony from another witness, even if in error, is harmless). Accordingly, we decline to grant Appellant relief. *Id.*

Appellant's next four issues challenge the sufficiency of the evidence. Initially, we note that in several of these issues, Appellant does not identify the elements of the crimes for which he was charged, and accordingly risks waiver. *See*, *e.g.*, ***Commonwealth v. Williams***, 959 A.2d 1252, 1257-58 (Pa. Super. 2008). However, as he generally challenges the sufficiency of the evidence to prove either identity or possession, we decline to find waiver in

this instance. We review a challenge to the sufficiency of the evidence as follows.

> In determining whether there was sufficient evidentiary support for a jury's finding [], the reviewing court inquires whether the proofs, considered in the light most favorable to the Commonwealth as a verdict winner, are sufficient to enable a reasonable jury to find every element of the crime beyond a reasonable doubt. The court bears in mind that: the Commonwealth may sustain its burden by means of wholly circumstantial evidence; the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence.

*Commonwealth v. Diggs*, 949 A.2d 873, 877 (Pa. 2008) (citations omitted).

In his fourth issue, Appellant claims that the evidence was insufficient to sustain his conviction for robbery. *See* Appellant's Brief at 33. Appellant contends that because neither of the victims was able to identify Appellant as the robber and none of the items taken from the victims were found at the time of his arrest, the evidence was insufficient. *Id.* at 34.

A person is guilty of robbery if, in the course of committing a theft, he threatens another with fear of immediate serious bodily injury. *See* 18 Pa.C.S. § 3701(a)(1)(ii). Ms. Cook testified that Mr. Blake and Appellant got out of the car and walked towards the victims and later fled in the getaway car with her. Mr. Dunlap heard one of the robbers refer to the other as "Shizz," Appellant's nickname. Despite his later equivocation, Mr. Jones made a statement to the police that he was "100%" sure that Appellant was the man who had robbed him at gunpoint. Several witnesses testified consistently

regarding Appellant's clothing, complexion, and neck tattoos. Appellant's DNA was found on bottles inside the getaway car. Accordingly, the evidence was sufficient to establish that Appellant was the person responsible for committing the robbery. *See Diggs*, 949 A.2d at 877.

Fifth, Appellant claims that the evidence was insufficient to sustain his convictions for assault on a law enforcement officer where the Commonwealth did not prove that Appellant was the person who fired the shots. *See* Appellant's Brief at 34. Essentially, Appellant contends that because the firearm was never found, no gunpowder was found on his hands, and because Ms. Cook's testimony was biased, the evidence was insufficient. *Id.* at 35.

We have held that the Commonwealth must prove:

(1) the defendant attempted to cause, or intentionally or knowingly caused, bodily injury, (2) the victim was a law enforcement officer acting in the performance of his duty, (3) the defendant had knowledge the victim was a law enforcement officer, and (4) in attempting to cause, or intentionally or knowingly causing such bodily injury, the defendant discharged a firearm.

*Commonwealth v. Landis*, 48 A.3d 432, 445 (Pa. Super. 2012) (*en banc*) (citation omitted); *see also* 18 Pa.C.S. § 2702.1(a).

Here, the evidence established that Appellant fired multiple shots at Officer Diaz during pursuit following the robbery. Officer Diaz was in a marked police car with active lights and sirens. Officer Diaz described a man of Appellant's general description as the shooter, Appellant's DNA was found on

a bottle inside the Hyundai, and Ms. Cook testified that Appellant leaned out the passenger seat window and fired a gun.

Insofar as Appellant challenges Ms. Cook's testimony, that challenge goes to weight rather than sufficiency and is within the sound discretion of the fact-finder. *See*, *e.g.*, *Commonwealth v. Melvin*, 103 A.3d 1, 43 (Pa. Super. 2014) (noting that a challenge to the credibility of a witness is a challenge to the weight of the evidence); *see also Commonwealth v. Houser*, 18 A.3d 1128-1135-36 (Pa. 2011) (noting that a claim alleging the verdict was against the weight of the evidence is limited to whether the factfinder's discretion was properly exercised). The jury was free to believe or disbelieve Ms. Cook's testimony, and it found her credible.

Accordingly, the evidence was sufficient to sustain Appellant's conviction for assault on a law enforcement officer, because it established that Appellant attempted to cause injury to Officer Diaz, who was acting in the performance of his duty, and that Appellant was aware Officer Diaz was a police officer. *See Diggs*, 949 A.2d at 877; *Martuscelli*, 54 A.3d at 948; *Landis*, 48 A.3d at 445.

Sixth, Appellant claims the evidence was insufficient to sustain his conviction for possession of a firearm without a license, as the Commonwealth did not prove that Appellant possessed a firearm. *See* Appellant's Brief at 35. Appellant contends that because the firearm was never recovered, the photographs introduced were undated, the testimony of the witnesses was not credible, and it could not be proven that the bullets and casings were fired

- 16 -

from the firearm purchased by Ms. Sloane, the evidence was insufficient. ***Id.*** at 35-36.

We again note that Appellant's challenges to the credibility of Ms. Sloane and Ms. Cook are inappropriate in a sufficiency argument and more properly couched as a weight claim. ***See Melvin***, 103 A.3d at 43; ***Houser***, 18 A.3d at 1135-36. Appellant was able to cross-examine both Ms. Cook and Ms. Sloane, and the jury was free to believe or disbelieve their testimony. We decline to re-weigh the evidence in this case. ***Id.***

The statute provides, in relevant part, that any person who carries a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license, commits a felony of the third degree. ***See*** 18 Pa.C.S. § 6106; ***see also Commonwealth v. Lopez***, 57 A.3d 74 (Pa. Super. 2012). In the instant case, the evidence was sufficient to sustain Appellant's conviction. Testimony established that Ms. Sloane purchased a .40 caliber Taurus pistol for Appellant's use. Photographs showed Appellant holding and wielding a semi-automatic pistol. Mr. Jones testified that Appellant threatened him with a firearm and hit him with it. Ms. Cook testified that Appellant held a gun and fired it from the window of the getaway car. Appellant's fingerprints were found on papers inside the case of the Taurus pistol. The bullets and casings recovered from the scene were consistent with being fired from a .40 caliber pistol and could have been fired from a Taurus. The parties stipulated that Appellant did not have a license to possess a firearm. Accordingly, the

evidence was sufficient to establish that Appellant possessed a firearm outside of his place of abode and did not have a license to do so. *See Lopez*, 57 A.3d at 74.

Seventh, Appellant claims the evidence was insufficient to sustain his conviction for escape where the Commonwealth did not prove that Appellant left official detention. *See* Appellant's Brief at 37. Appellant argues that, although there were police sirens and a police chase, the vehicle in which Appellant was a passenger did not pull over or acquiesce to commands, it was accordingly never in official detention. *See* Appellant's Brief at 39. Appellant distinguishes *Commonwealth v. Stewart*, 648 A.2d 797 (Pa. Super. 1994), and relies upon *Commonwealth v. Woody*, 939 A.2d 359 (Pa. Super. 2007), to support his argument.

"A person commits [the offense of escape] if he unlawfully removes himself from official detention . . . ." *See* 18 Pa.C.S. § 5121(a). Escape is a felony where the actor was under arrest for or detained on a charge of felony and employs a deadly weapon to effect the escape. *See* 18 Pa.C.S. § 5121(d). "Official detention" means "arrest . . . . or any other detention for law enforcement purposes." *See* 18 Pa.C.S. § 5121(e). We have previously determined that official detention, in the context of escape, means "a seizure in which the police have restrained the liberty of a person by show of authority or physical force." *See Commonwealth v. Santana*, 959 A.2d 450, 452 (Pa. Super. 2008) (internal citations and quotations omitted). Determination of

whether a seizure occurred is based upon the totality of circumstances and whether a reasonable person would have believed he was free to leave. *Id.*

In *Stewart*, police officers responded to a domestic dispute, in uniform and in a marked car. *See Stewart*, 648 A.2d at 797. After being informed that the appellant had a weapon, a police officer pulled his vehicle alongside the appellant's and ordered him to put his hands on the dashboard. *Id.* The appellant drove away and was taken into custody shortly thereafter. *Id.* Our Court upheld the appellant's conviction for escape and found that the show of authority was sufficient to establish official detention, reasoning that "no reasonable person would believe he or she is free to leave when a uniformed officer with a gun drawn has requested that person turn the car off and to place his or her hands on the dashboard." *Id.* at 798.

In *Woody*, a police officer attempted to initiate a traffic stop by turning on his lights and sirens, but the appellant fled on foot. *See Woody*, 939 A.2d at 360-61. The police officer gave chase, yelling for him to stop. *Id.* at 361. The appellant was apprehended and charged with escape. *Id.* at 361. Our Court vacated his conviction for escape, noting that in *Stewart* there was a "momentary period in which the officer was able to demonstrate a show of authority to the appellant" as to suggest to him that he was officially detained. *Id.* at 362. The *Woody* Court found that, unlike in *Stewart*, the charge of escape was based solely on the appellant's failure to comply with instructions to stop and get on the ground. *Id.* at 363. This command, without an

additional show of authority or force, was insufficient to establish that the appellant had been detained. ***Id.***

In the instant case, Officer Diaz effectuated a pursuit of Appellant with his lights and sirens activated, in uniform, in a marked police car. He did not speak with Appellant, order him to stop, or inform Appellant he was under arrest. Due to the emergent circumstances of the crime and flight, no warrant had been issued for Appellant's arrest. Essentially, whether Appellant was under official detention hinges on whether pursuit with lights and sirens is sufficient to establish pre-arrest detention.

The trial court and the Commonwealth contend that, because Officer Diaz pursued Appellant with lights and sirens, the jury could reasonably infer that Appellant knew he was not free to leave. This is not consistent with current Pennsylvania law. ***See***, ***e.g.***, ***Commonwealth v. Woody***, 974 A.2d 1163 (Pa. 2009) (per curiam) (Eakin, J., dissenting) (affirming Superior Court; J. Eakin in dissent noting that lights and sirens should be sufficient to alert a reasonable person that he or she is being detained). Without some other show of authority, the Commonwealth cannot establish that Appellant was officially detained. ***See***, ***e.g.***, ***Commonwealth v. Colon***, 719 A.2d 1099, 1101 (Pa. Super. 1998) (noting that a warrant for arrest completes a required element of official detention); ***see also Santana***, 959 A.2d at 453 (noting that the warrant to detain appellant, officers ordering appellant to stop running, and officers informing appellant he was under arrest were sufficient to establish detention).

Accordingly, we vacate Appellant's conviction for escape, as the evidence was insufficient to support the contention that he was under official detention at the time of his flight.  **See Woody**, 939 A.2d at 363.  Further, our disposition of this issue may disturb the court's overall sentencing scheme.  **See Commonwealth v. Goldhammer**, 517 A.2d 1280, 1283-84 (Pa. 1986) (stating, "When a defendant challenges one of several interdependent sentences, he, in effect, challenges the entire sentencing plan."); **see also Commonwealth v. Williams**, 871 A.2d 254, 266-67 (Pa. Super. 2005) (noting that, where this Court disturbs the court's overall sentencing scheme, it is appropriate to remand for resentencing).  Accordingly, we remand for resentencing, and decline to address Appellant's claim regarding the discretionary aspects of his sentence.

Judgement of sentence for escape reversed.  For all remaining charges, Appellant's convictions are affirmed.  Judgment of sentence for the remaining convictions vacated.  Remanded for resentencing.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/19/2017

- 21 -